## In re ROYAL.

(District Court, E. D. North Carolina. December 2, 1901.)

BANKRUPTCY—DISCHARGE—CONCEALMENT OF ASSETS.

    A voluntary bankrupt stated in his schedules that he had no cash on hand, and he made no disclosure of any during his examination, but it subsequently appeared that at the time of the filing of his petition he had a deposit in bank exceeding $100. After such fact was shown he made no application to amend his schedules, and no offer to turn the money over to his trustee. *Held*, that under such circumstances the omission could not be deemed to have been due to inadvertence, but that he must be considered as having knowingly and fraudulently concealed the money from his trustee, and to have made a false oath to his schedules, which debarred him from the right to a discharge.

*d.* In Bankruptcy. On petition for discharge.

W. R. Allen, for petitioner.

H. L. Stevens, for creditors.

PURNELL, District Judge. The referee after hearing, on September 10, 1901, the petition for discharge, under district rule 8, upon objection to such discharge, certified the record to the judge, and the cause was heard at Wilmington, October 4, 1901. The following facts appear: Jacob H. Royal was duly adjudged a bankrupt on his own petition, filed April 29, 1901. At the time the petition was filed and adjudication made the bankrupt had to his credit in the bank of Clinton $109.38, which amount was not included in the schedules filed, or afterwards accounted for or surrendered to the trustee in bankruptcy. The referee in his report says:

"The evidence in the case does not satisfy the referee that the failure to include this item was with fraudulent intent, because if it had been included in the schedules there would not have been sufficient property to make up the personal property exemption to which the bankrupt is entitled under the constitution. The referee is of the opinion that the omission to schedule this $109.38 was by inadvertence, and that, under the circumstances, is not sufficient to bar the discharge. He therefore recommends that the discharge be granted."

The referee states other objections to discharge were abandoned, and in the argument counsel insisted, on the first and second objections—First, that the bankrupt had made a false oath, in that he failed to include in his schedules the $109.38 balance to his credit in bank; secondly, that he has fraudulently and knowingly concealed from the trustee the said amount which was omitted from his schedules of assets, and which appears to have been to his credit in bank at the time he filed his petition in bankruptcy. There is no evidence or suggestion that since the matter has been called to his attention the bankrupt has paid, or offered to pay, to the trustee the amount omitted from the schedules. The objections filed are in compliance with general order 32 of the supreme court. 18 Sup. Ct. xxxii.

The statute (Bankr. Act 1898, § 14b) provides that upon the hearing the discharge shall be granted, unless he (the bankrupt) has (1) committed an offense punishable by imprisonment, as herein provided, or (2) with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained. Objections to discharge under the second clause in the foregoing section were filed, but not pressed on the argument, and are presumed to be abandoned.

The offenses by a bankrupt punishable under the bankruptcy act are (1) knowingly and fraudulently concealing while a bankrupt, or after his discharge, from his trustee, any of the property belonging to his estate in bankruptcy; or (2) making a false oath or account in, or in relation to, any proceeding in bankruptcy (Bankr. Act, § 29b, cls. 1, 2), and a contempt of court (section 41, Id.).

The filing of a petition in bankruptcy is, as a rule, a deliberate act. Under some circumstances, when pressed to the wall,—which does not seem to have been the case in the present instance,—haste is nec-

essary, and errors occur in making up schedules. When attention is called to such errors, leave to amend and correct is always granted. Ordinarily, at least in voluntary proceedings, the party seeking the benefit of the act—a discharge from his debts—makes up a balance sheet,—schedules his assets and liabilities. One is as necessary as the other. He takes a solemn oath that the one (a) contains a full and true statement of all his debts, and the other (b) contains an accurate inventory of all his property, both real and personal, and such further statements concerning said property as are required by the provisions of "said acts"; the acts of congress being referred to in the preceding part of the petition. This oath—one of the forms prescribed by the supreme court—was duly taken and subscribed on the 26th day of April, 1901. The several schedules, showing nominal assets amounting to $13,659.50, were filed, and also signed, and under the item, "Cash on Hand" (Schedule B, 2), the word "None" is written. The bankrupt was before the referee May 13th, and on subsequent days, when he was examined and cross-examined, but says nothing about the money in bank; but the bank account filed as an exhibit, dated June 28, 1901, shows this balance still to the credit of the bankrupt. It does not appear he was examined as to this item or when it was called specially to his attention, and this does not seem to be essential, in view of the oath he had made when the petition was filed. His attention was directed to the matter prior to the hearing before the referee in September, or before this court in October, and yet during the six months within which this proceeding has been pending there is no offer or suggestion of a willingness to correct the error, if it was an error in the first instance.

It is not deemed necessary to enter into a dissertation on the meaning of the words "knowingly" and "fraudulently," as used in the statute, or the distinction, not noted by the referee, between their use and with "fraudulent intent," which does not appear in this connection in the statute. They are adverbs, regularly derived and well understood; they are thus used in the statute. If the item of the amount in the bank was "inadvertently" omitted from the original schedules, the "inadvertence" vanishes when the subsequent proceedings are considered, and the persistent neglect of petitioner to correct the error, if it was an error due to inattention, oversight, or excusable negligence. One charged with a misapplication of funds might with better grace claim, as an excuse or defense, inadvertence in the rush of business, and still retain that for which he has failed to account. This court cannot concur in the very optimistic view taken by the referee, but must conclude the sum of $109.38 was knowingly omitted from the schedules filed with the petition, and was knowingly and fraudulently concealed from the trustee after the petitioner was adjudged a bankrupt.

The ground stated by the referee is not sufficient. The bankruptcy act contemplates that a petitioner shall schedule and surrender his entire estate,—all his property, real, personal, and mixed,—and provides specifically how the exemptions shall be set aside or allotted to the bankrupt. To permit the bankrupt to omit from his schedules cash on hand, or any other property, on his claim that he would be al-

lowed such property as an exemption would be to defeat one of the plain provisions of the law, and deprive creditors of their rights. The act does not contemplate such practice. Parties seeking the relief afforded by the act must follow its provisions and the rules made in pursuance thereof.

The assets scheduled are, nominally, nearly $14,000, according to petitioner's valuation, and the personal property exemption in North Carolina is $500. This court, having no information as to what has been realized on the assets, cannot understand why, if it (the deposit in bank) had been included in the schedules, there would not have been sufficient property to make up the personal property exemption to which the bankrupt is entitled under the constitution. If this were true, it would not justify a false oath to the petition, knowingly made, which this view seems to admit inferentially, or knowingly and fraudulently concealing from the trustee while a bankrupt property belonging to the estate.

The action of the bankrupt in this case was a palpable violation of the statute (Bankr. Act, § 29, cls. 1, 2), in knowingly and fraudulently concealing while a bankrupt from his trustee property belonging to his estate in bankruptcy, making a false oath in relation to a proceeding in bankruptcy,—an abuse of the process of the court which amounts to a contempt punishable as a crime, and good ground for refusing a discharge. The attention of the grand jury should be directed to such matters.

It is therefore considered, ordered, and adjudged that the recommendation of the referee be not approved, the petition be dismissed, and the discharge refused.