VANTAGE MINING COMPANY, Plaintiff, v. HORACE M. BAKER, Appellant and Respondent and W. W. BAKER, Appellant and Respondent, and BESSIE BURCHARD, et al., Respondents.

Springfield Court of Appeals, April 7, 1913.

1. HUSBAND AND WIFE: Inchoate Dower: Not an Estate or Interest in Land. A wife's inchoate right of dower is not an interest or estate, in land, and cannot, while inchoate, be valued in money; nor can it be transmitted or assigned except by joining in a conveyance with her husband.

2. ———: ———: A Substantial Right: An Incumbrance on Title to Land. The inchoate right of dower is an incumbrance on, and affects, the title to land. It is a substantial right, possessing many of the incidents of property and the wife cannot be deprived of the right nor compelled to relinquish it.

3. ———: ———: Lease of Land: Consideration for Relinquishing Inchoate Dower. Where the wife signed a mining lease of land with her husband in which she had only an inchoate right of dower, the signing thereof furnished a sufficient consideration for the provisions of the lease making a part of the rent or royalty payable directly to her.

4. REAL ESTATE: Reversion Defined. Reversion is the residue of an estate left by operation of law in the grantor or his heirs or in the heirs of a testator commencing in possession on the determination of a particular estate granted or devised.

5. **REAL ESTATE: Transfer of Ownership: Right to Rent.** Rent generally follows the ownership of land, and any transfer of land by deed, will or inheritance, carries with it the right to collect and receive the rent.

6. **HUSBAND AND WIFE: Lease of Real Estate: Stipulated Per Cent of Rental Payable to Wife: Is Personal Property.** The wife joined with her husband in making a mining lease of certain of his land in which she had only an inchoate right of dower. It was stipulated in the lease that a certain per cent of the royalty or rent should be paid to the wife personally. *Held*, that the part payable to her was personal property and upon her death the share of the rents or royalty due her and to become due under the lease, passed to her heirs; in the present case, to her husband and their four children, one-fifth to each.

7. **————: Transfer by Husband After Wife's Death of His Interest in Wife's Royalty: Assignment Reviewed.** Where, in the case above stated, pending the administration of the wife's estate, one of the children purchased all the right, title and interest in and to the husband's distributive share of the wife's estate except in the real estate, as said estate "is shown by the records of the probate court," *held*, that the transfer and conveyance included the interest that the husband had in the royalty on the land which was payable to the wife. The clause, "as shown by the records of the probate court," was not placed therein for the purpose of cutting down or limiting the interest conveyed, but as pointing out where the parties might obtain more definite information as to the amount and nature of the estate, an interest in which was being conveyed.

Appeal from Jasper Circuit Court, Division Number One.—*Hon. Joseph D. Perkins*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. R. Robertson, S. W. Bates* and *R. M. Sheppard* for appellant H. M. Baker.

(1) Sarah E. Baker had only an inchoate right of dower in the property in controversy at the time of the execution of the lease involved herein, which interest could not be assigned, released or relinquished except by joining in a conveyance with her husband. That right could not arise to the dignity of an interest in the property unless Mrs. Baker survived her hus-

band, in which event her inchoate right of dower would have become consummate, and before her husband's death she had no interest in this property which by deed, devise or by inheritance could have been transmitted to any other person. Brannock v. Magoon, 216 Mo. 722-727; Duret v. Piper, 58 Mo. 551-554. (2) The value of her interest in this property could not be ascertained prior to her husband's death. Real Estate Co. v. Spelbrink, 211 Mo. 671. (3) Where a wife joins a husband in a deed to his land and relinquishes her dower, it is implied that a portion of the consideration named in the deed or actually paid represents the value of her dower interest. Beeley v. Blake, 153 Mo. 657-672; s. c. 141 Mo. App. 316. (4) Where a lease provides that the rent mentioned therein shall be paid to the wife of the lessor at the death of the lessor, the wife's interest under the lease ceases, and she takes such an interest in the rents as she would be entitled to as dower. Murray v. Kazier, 53 N. E. 476. (5) The right to the payment of rent follows the reversion, and the right to collect it passes to the person who takes the reversion. 1 Underhill on Landlord and Tenant, sec. 336; Wood, Landlord and Tenant, sec. 455. (6) Where the remaindermen or the reversioners unite with the life tenant in the execution of a lease, as lessors, the term does not end with the death of the life tenant during the term. On the death of the life tenant the term continues and the lease at once becomes the lease of the remaindermen or reversioners. Underhill on Landlord and Tenant, p. 8. (7) Rent is incident to the reversion, and whenever that is severed, either by the act of the parties or the act of the law, the rent will follow the reversion and be payable to the assignee thereof. Stevens v. Hannock, 72 Mo. 612-15; Page v. Culver, 55 Mo. App. 606; Page v. Culver, 158 Mo. 515. (8) It is a well-settled rule in this State and by the authorities generally that rent which accrues during the life of the

landlord passes to the administrator of his estate, and that all rent accruing upon land after the death of the landlord descends to his devisees or heirs, subject only to the right of the administrator to take the same for the purpose of paying debts of the estate. Shouse v. Krusor, 24 Mo. App. 274. (9) H. M. Baker, by this assignment, undertook to convey to W. W. Baker a certain interest which the said H. M. Baker had in and to the estate of Sarah E. Baker. Under the terms of the assignment H. M. Baker conveyed only the interest which he had in the estate of Sarah E. Baker, which was shown by the records of the probate court of Jasper county, Missouri. If there was any property which belonged to the estate of Sarah E. Baker and which was not shown by the records of the probate court of Jasper county, Missouri, his interest in such property was not transferred by reason of this assignment. (10) The burden was on the appellant W. W. Baker to show that the records of the probate court of Jasper county, Missouri, relative to the estate of Sarah E. Baker included the money in question. There is no evidence introduced or which was offered that would show or tend to show in the slightest degree that the records of the probate court of Jasper county showed that the money in question or any part thereof belonged to the estate of Sarah E. Baker. The money in question arising from the royalties under the lease did not accrue until after the administrator had made his final settlement and had been discharged; the only thing which this assignment was intended to cover was such property as the administrator had in his possession, as shown by the records of the probate court.

*McReynolds & Halliburton* for appellant W. W. Baker.

(1) While the legal title to personal property passes and vests in the executor or administrator at

the decedent's death it does not follow that he shall sell the same in order that the proceeds may be distributed among the heirs or legatees of the decedent, and it is held by the courts without exception "that the legal title that vests in the executor or administrator is in the nature of trust title for the use and benefit of the creditors or heirs of the deceased, but if there are no creditors to be paid by the sale of such property, then and in that event the heirs or legatees take such property as the equitable owners thereof. The law does not require a useless and unnecessary thing. Richardson v. Cole, 160 Mo. 372; McCracken v. McCaslin, 50 Mo. App. 85. (2) In the case at bar the administrator did not sell the chattel real that came to him in the nature of three per cent royalty in the mining lease as an asset of the decedent's estate, as it was not necessary to sell the same to pay debts, hence on final settlement as such administrator with this asset on hands it passed as a matter of equity to the parties entitled to distribution. Richardson. v. Cole, supra; Walworth v. Abel, 52 Pa. St. 370; Weaver v. Roth, 105 Pa. St. 408. (3) An administrator has the legal title to the personal estate of his decedent, as trustee for the payment of debts, but after they are paid the residue of such estate belongs to the heirs. Lewis v. Lyons, 13 Ill. 177; Woodhouse v. Pheps, 57 Conn. 521. (4) In view of the fact that the trial court found that the interest of three per cent royalty set apart to Sarah E. Baker, was a chattel real and went to the administrator, then under the authorties above cited, when it was found that it was not needed to pay debts of decedent by the administrator, passed to the distributees of the deceased as a matter of right and equity and we contend that anyone of the distrbutees could have, if he or she so desired, assigned his or her interest in the assets of such estate. Barrie v. Railroad, 138 Mo. App. 557. (5) The elements of a sale at common law are mutual agreement, competent

party, money consideration, and transfer of absolute or general property in the subject-matter. Wheless v. Grocer Co., 140 Mo. App. 572; Hotel Co. v. Grocer Co., 140 Mo. App. 592.

*McReynolds & Halliburton* for respondents.

(1) The question in this case is as to the effect of the covenant of the lease, "Exhibit A," record page 41, clause 4th, as follows: "4th. The party of the second part, his successors and assigns shall pay to the parties of the first part on Monday of each week as rent or royalty 5 per cent to H. M. Baker and 3 per cent to Sarah E. Baker, of the market value of all ores mined or sold during the preceding week." This clause creates an interest or property in Sarah E. Baker, a covenent in her behalf, irrevocable in so far as her joint lessor or the lessees or assigns are concerned. The estate created is a chattel real, and by operation of law the legal title, at her death, goes to her executor or administrator, and thence to her heirs. (2) If, however, a leasehold is personal property, it passes, primarily, on the death of the owner, to the executor or administrator, and until the heirs or legatees receive it through the process of administration, the legal title thereto is in such legal representatives. Leakey v. Maupin, 10 Mo. 368; Gillett v. Camp, 19 Mo. 404; Rouggley v. Teichmann, 10 Mo. App. 257; Richardson v. Cole, 160 Mo. 372. (3) H. M. Baker assigned and set apart to his wife Sarah E. Baker three per cent of the rental or royalty arising from the mining lease in question, the lessee covenanted to pay the same to her, which assignment and segregation of said part of rental comes within the following rule; "The grantor may sever the rent from the reversion, by granting the land with a reservation of the rent; or by assigning the rent and either retaining the reversion himself, or conveying it to a third party who has knowledge of such assignment." Leonard v. Bur-

gess, 16 Wis. 42 and 44; 24 Cyc. 928, and cases cited; 1 Washburn on Real Property, p. 453, sec. 10. (4) Where the rent is assigned the relation of landlord and tenant is established between the assignee. The assignee, however, has no right of ownership or right to possession and no interest beyond the term of the lease. 24 Cyc. 929, and cases cited; Demorest v. Willard, 8 Cow. (N. Y.) 206; 2 Taylor's Landlord & Tenant, p. 2; Iowa Savings Bank v. Funk, 1 Neb. 523, 92 N. W. 916; Rhoads v. Speers, 15 Pa. Dist. 535, 32 Pa. Co. Ct. 538; Watkins v. Hunkins, 13 Iowa, 547; Brownson v. Roy, 95 N. W. (Mich.) 710. (5) H. M. Baker made a contract with his wife, Sarah E. Baker, agreeing that if she would join him in the mining lease she would have three per cent of the royalty for a definite period, to-wit: the life of the lease. This was agreed to by the lessee for himself and his assigns. This agreement is incorporated in the lease itself, and H. M. Baker, as well as the assignee of the lessee, is estopped from denying the contract with Sarah E. Baker. Taylor v. Fox, 16 Mo. App. 527; Irons v. Price, 14 Mo. App. 179; Church Soc. v. Branch, 120 Mo. 226; Barrett v. Baker, 136 Mo. 512. (6) The question of inchoate dower or dower consummate are foreign to the issues in this cause. If a stranger instead of the wife had been the recipient of a similar provision in the lease contract, and had for several years received the royalty, as Mrs. Baker did, and after death his administrator had received the royalty as Mrs. Baker's administrator did, who could or would question the validity of the covenant of the lease, whereby three per cent of the royalty had been set apart to him? The wife was under the law clothed with authority to make a contract. She did make it. Then why should it not be enforced? The appellant, through his attorneys, has sidestepped the issues in this case, and argues that which is no part of the issue or controversy.

STURGIS, J.—The plaintiff in this case is and has been mining certain land in Jasper county Missouri, under a mining lease of the usual form used in that district, except as to the clause providing for the payment of the rent or royalty, which is as follows: "The party of the second part, his successors and assigns shall pay to the parties of the first part on Monday of each week as rent or royalty *five per cent to H. M. Baker* and *three per cent to Sarah E. Baker,* of the market value of all ores mined or sold during the preceding week."

The beneficiaries of this rental clause, H. M. Baker and Sarah E. Baker, are the grantors in said lease and at the time of making same were husband and wife. H. M. Baker was the owner of the land demised and his wife had no interest in the same at the time she joined in making the lease except her inchoate right of dower.

For some years after making the leases the plaintiff mining company paid the royalty of eight per cent of the value of the ores mined and sold regularly and without any question as to the ownership of same to said H. M. Baker and Sarah E. Baker in the proportions specified in the above clause of the lease—five-eighths to H. M. Baker and three-eighths to Sarah E. Baker. Sarah E. Baker died in May, 1909, and until the final settlement of her estate in the probate court two years later the plaintiff, without any question being raised as to the ownership of the royalty, continued to pay the same in the same proportions to H. M. Baker and to the estate of Sarah E. Baker. In October, 1911, H. M. Baker first set up the claim that he was entitled to all the rent and royalty accruing under this lease and notified plaintiff to that effect and to pay all of such royalty to him and no part of the same to the heirs of his deceased wife. The wife's heirs—their common children—made claim of right to the three-eighths of the royalty payable under the lease

to their mother. Thereupon the plaintiff filed its bill of interpleader, making said H. M. Baker and the four children of Sarah E. Baker parties defendant. The defendants appeared and by separate answer asserted their respective claims to the royalty accruing under the lease, and by consent plaintiff has been paying same into court as it accrued.

I. The main question to be determined in this case arises on the appeal of H. M. Baker and is whether after the death of Sarah E. Baker the three per cent rent and royalty, specified in the lease to be paid to her, belongs to her husband, H. M. Baker as owner of the land, or to her children, the other defendants, as her heirs. The trial court held that such part of the royalty properly belonged to the children as heirs. H. M. Baker appealed and urges here that on the death of Sarah E. Baker, and settlement of her estate, that part of the royalty specified to be paid to her followed the ownership of the land and became payable to him as such owner. That question will now be examined.

It will be conceded, as contended by appellant, that the only interest Sarah E. Baker had in the land covered by the lease was her inchoate right of dower; and that such right does not rise to the dignity of an interest or estate in land and cannot while inchoate be valued in money, nor assigned, aliened or transmitted except by joining in a conveyance with her husband. [Brannock v. Magoon, 216 Mo. 722, 116 S. W. 500, and authorities there cited. Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480.]

It is, however, shown by these same authorities that the inchoate right of dower is an incumbrance on and affects the title to land. It is a substantial right, possessing in law many of the incidents of property and even the courts cannot deprive the wife of

this right or compel her to relinquish or assign it by joining her husband in any conveyance. [Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480.] There can be no question therefore that her signing the mining lease in question, jointly with her husband, furnished a sufficient consideration for the provisions of the lease making a part of the rent or royalty payable to her. "A wife has no interest in her husband's lands which she can convey by separate deed, but she does have an interest which she can release by joining with her husband, and such release may be a valuable consideration." [Murray v. Cazier, 53 N. E. (Ind.) 476, 477.]

It is also true that rent generally follows the ownership of land and any transfer of land by deed, will or inheritance carries with it the right to collect and receive the rent. [Stevenson v. Hancock, 72 Mo. 612, 615; Page v. Culver, 55 Mo. App. 606; 24 Cyc. 1172.]

"Rent is incident to the reversion, and whenever that is severed by the act of the parties or the act of the law, the rent will follow the reversion and be payable to the assignee thereof." [Taylor Landlord and Tenant, sec. 383.]

But did the relation of landlord and tenant exist between Sarah E. Baker and the lessee? We cannot see how it could when she had neither possession or estate in the land. She was not the landlord. [24 Cyc. 923; Connolly v. Giddings, 24 Neb. 131, 37 N. W. 939.]

As we have seen, the wife, having only an inchoate right of dower, had no possession, title or estate in the land at the time the lease was made and she had no *reversion* therein after it is made. "Reversion is the *residue of an estate* left by operation of law in the grantor or his heirs or in the heirs of a testator commencing in possession on the determination of a particular estate granted or devised." [Black's Law

Dictionary, Reversion; 2 Blackstone's Comm. 175.] At the death of the wife there was no reversion passing from her to the husband or anyone else for the rent reserved to follow. Her right of inchoate dower perished with her. Learned counsel are entirely in error in assuming that, because she was one of the grantors, on her death the reversion passed from her to the husband and the rent payable to her would follow that reversion. Her death merely extinguished her inchoate right of dower and nothing passed to anyone any more than there would on the extinguishment of a mortgage on the land. For the purposes of this case the wife was a stranger to the land demised. The husband, H. M. Baker, is and was the landlord both before and after his wife's death and the owner of the reversion.

This is merely a case where the landlord in making this lease, for a valuable consideration and with the assent of the lessee, assigned and set apart to his wife, a third party, three-eights of the rent reserved to be paid to her during the life of the lease. We think it was competent for him to do this.

In Leonard v. Burgess, 16 Wis. 1. c. 42, the court said: "The grantor may sever the rent from the reversion, by granting the land with a reservation of the rent; or by assigning the rent and either retaining the reversion himself, or conveying it to a third party who has knowledge of such assignment."

In 24 Cyc. 928: "The lessor may assign the rent and covenant for rent without the reversion. It is immaterial that the rent assigned is not due. . . . Where the rent is assigned the relation of landlord and tenant is established between the assignee and lessee. The assignee, however, has no right of ownership or right to possession and no interest beyond the term of the lease." [See also 24 Cyc. 1175.]

In Murray v. Cazier, 53 N. E. (Ind.) 476, the court said: "The owner of the land, the husband, had en-

tire control over the rents during his lifetime and could direct their payment to whomsoever he pleased. . . . As the rent accrued he could do as he pleased with it, for it then became as any other debt due. It is quite true that the rent may be assigned by a lessor before it becomes due, so as to devest the lessor of all right of action for such rent." [See also 1 Underhill on Landlord and Tenant, sec. 336.]

There is no question that if the rent had been evidenced by a note, payable to the wife, that on her death the same would have passed to her heirs and we do not see why the same thing could not be accomplished by a suitable provision in the lease itself.

That the right of Sarah E. Baker to collect and receive this rent or royalty is personal property there can be no doubt. The lease in question severed it from the reversion and assigned it to her. It is held in Orchard v. Store Co., 225 Mo. 414, 433 (125 S. W. 486), and the many authorities cited there, that a leasehold for any number of years is personal property. Certainly the rent and right to collect the rent is personal property, at least when thus severed from the reversion.

Being personal property, the estate being finally settled and not having been used to pay debts of the deceased, the share of the rents payable to Sarah E. Baker due and to become due under the lease passed to the heirs of Sarah E. Baker, to-wit, to her husband, H. M. Baker, and their four children, one-fifth each; and the trial court correctly so held. [Revised Statute 1909, section 349; Richardson v. Cole, 160 Mo. 372 61 S. W. 182; McCracken v. McCaslin, 50 Mo. App. 85.]

II.    The second question to be determined herein arises on the appeal of W. W. Baker. He claims that he purchased and had assigned to him his father's one-fifth interest in the part of the royalty payable

to Sarah E. Baker; and that he is entitled to that share of the royalty in addition to the one-fifth coming to him as one of her heirs. In support of his claims it appears that during the course of the admniistration of his mother's estate, he and his father, H. M. Baker, entered into the following agreement:

"This indenture, made on this 19th day of October, 1910, by and between H. M. Baker, a single man, of Carthage, Jasper County, Missouri, as party of the first part and W. W. Baker, of Carthage, Jasper county, Missouri, as party of the second part.

"Witnesseth: That said party of the first part, for and in consideration of the sum of five hundred dollars ($500) and other valuable considerations not herein mentioned, to him paid by the party of the second part, the receipt of which is hereby acknowledged, does by these presents, grant, bargain, sell, convey and confirm unto said party of the second part, his heirs and assigns, the following described property, to-wit:

"All of the right, title and interest in and to his distributive share of the estate of Sarah E. Baker, deceased, as said estate is shown by the records of the probate court of Jasper county, Missouri, except his distributive share in the following described piece of real estate situated in Jasper county, Missouri, to-wit:" Here follows description of certain lands.

It seems to be conceded that this instrument is sufficient to transfer to W. W. Baker whatever part of the royalty was paid during the time of the administration, but that when final settlement was made his right to collect and receive his father's share of this royalty ceased and determined. This claim is based on the supposed limitation of the interest transferred made by the words, "As said estate is shown by the records of the probate court of Jasper county, Missouri." The trial court sustained the contention of the father, H. M. Baker, in this respect.

The argument in support of this contention is that "the burden is on the apellant, W. W. Baker, to show that the records of the probate court, relative to the estate of Sarah E. Baker, include the money in .question;" that there is no proof of this fact in the record of this case; that the money in question arising from the royalty under the lease did not accrue until after final settlement; that the only thing which this assignment was inténded to cover was such property as the administrator had in his possession as shown by the records of the probate court.

We are not impressed with this argument. The transfer and conveyance is of all the right, title and interest in and to grantor's distributive share of the estate of Sarah E. Baker, deceased. The clause then added, "as said estate is shown by the records of the probate court of Jasper county, Missouri," appears to have been added, not as cutting down or limiting the thing conveyed, but rather as pointing out where the parties might go to obtain more definite information as to the amount and nature of the estate, an interest in which was being transferred. We do not think that the intention of the parties was to cut down and lessen the thing granted, so as to convey only a part of the distributive share, when the previous language is so explicit in conveying all of such distributive share. We are strengthened in this conclusion by the fact that the grantor expressly excepts from the conveyance his distributive share of certain real estate; which would not usually be shown by the records of the probate court, except in the inventory. Whether or not deceased's interest in the rent made payable to her by the lease is shown by the inventory we are not advised as the inventory was not put in evidence. If that fact were material we might indulge the presumption that the administrator did his duty in making an inventory of all the estate of deceased; and so the interest in the mining lease would

be shown by the records of the probate court. [Agan v. Shannon, 103 Mo. 661, 15 S. W. 757; Chilton v. Metcalf, 234 Mo. 27, 136 S. W. 701; Smith v. Vickery, 235 Mo. 413, 138 S. W. 502; State ex rel. v. Williams, 99 Mo. 291, 12 S. W. 905.]

The court therefore erred in holding that H. M. Baker was entitled to a one-fifth of the royalty in question and directing its payment to him.

It results that the case should be reversed and remanded, with directions to enter judgment in favor of the defendants W. W. Baker, Bessie Burchard, H. Due Baker and Clyde E. Baker for all the rents and royalties paid into court, less the proper costs and expenses. It is so ordered.

*Farrington*, J., concurs. *Robertson, P. J.,* being of counsel, not sitting.

## SEPARATE CONCURRING OPINION.

FARRINGTON, J.—I desire to concur in the opinion of STURGIS, J., and to state additional grounds for my concurrence.

It will be noted that the lease was between H. M. Baker and Sarah E. Baker, his wife, known as parties of the first part, and George H. Davis (who assigned to plaintiff) as party of the second part; that throughout the entire lease it is recited to be made with the *parties* of the first part, except that the term "first *party*" is used in the second paragraph; that the lease containing the agreement of the parties had inserted therein the following provision: "4th. The party of the second part his successors and assigns shall pay to the parties of the first part on Monday of each week as rent or royalty five per cent to H. M. Baker and three per cent to Sarah E. Baker, of the market value of all ores mined or sold during the preceding week."

I construe this lease to be an undertaking on the part of the second party to pay H. M. Baker five per cent weekly for a period of ten years, and in addition, an undertaking and agreement to pay Sarah E. Baker three per cent weekly for a period of ten years.

It will be observed that there is not an agreement on the part of the second party to pay eight per cent to the *parties of the first part,* and then a direction by H. M. Baker to the lessee to pay three per cent thereof to Sarah E. Baker. It is a straight contract to pay to each of two different persons a certain per cent weekly for a period of ten years. The husband, H. M. Baker, was willing to make the lease on the agreement that he was to receive five per cent, and the wife, Sarah E. Baker, was willing to sign it on the agreement that she was to receive three per cent weekly for a period of ten years from the second party. The consideration moving from her was the relinquishment of her dower right, inchoate or consummate as the case might be, for a period that would not last longer than ten years, and that is exactly what the lessee took when her signature was placed on the lease. As to what that cloud or encumbrance which attached to her husband's land during the life of both and which was removed *instanter* by her signature to the lease, was worth, was a matter entirely between the wife and the lessee. The lessee agreed that it was worth a sum of money equal to three per cent of the market value of all ores mined during the term of the lease, payable weekly, and she agreed to accept it. When she made this contract, she did have an encumbrance that was worth something to the lessee; the contract on her part extinguished a right that might become consummate during the term of the lease and hence was worth a money consideration. This right, inchoate at the time, was an asset belonging to her, not by reason of any gift or act of her husband, but created and existing purely by operation of law; she

had a right to sell it when she could get anyone to buy it, and when she parted with it by the lease for a money consideration she thereby reduced her inchoate right to a fixed and certain asset which became her individual property and a part of her separate estate —regardless of when the money that would be paid under the contract became due. The contract which she made, binding the lessee to pay her three per cent as royalty for ten years, would pass to her administrator, and, in the absence of debts, to her heirs, as effectually as would a promissory note payable in monthly instalments covering a period of ten years.