William B. Bostian, as Trustee in Bankruptcy of Bessie Eichenberg, v. M. G. Milens, Administrator of the Estate of Harry G. Milens, Deceased, M. G. Milens, Charles E. Milens and Rebecca Westerman.—193 S. W. (2d) 797.

Kansas City Court of Appeals. February 11, 1946.

*Myer M. Rich, Julius C. Shapiro* and *Walter A. Raymond* for appellants.

558

*Harold Waxman, Hugh B. Downey* and *Maurice J. O'Sullivan* for Bessie Eichenberg, appellant.

*Nelson E. Johnson,* and *C. E. Thomson* for respondent.

BLAND, P. J.—This is appeal from a judgment or decree in favor of the plaintiff. The appeal was originally taken to the Supreme Court; but that court held that it had no jurisdiction and transferred the cause here. [See Bostian v. Milens et al., 188 S. W. (2d) 945.]

The defendant Charles E. Milens died during the pendency of this appeal and the cause, as to him, has been revived in the name of Josephine B. Milens and the Commerce Trust Company, his executors.

We find that the facts, as stated in the opinion of the Supreme Court, are substantially correct and, therefore, adopt them, with some additions. We quote from the opinion of the Supreme Court:

"Suit in equity instituted by the trustee of the estate of Bessie Eichenberg, a bankrupt, to cancel and hold for naught written and oral renunciations (by which the bankrupt had undertaken to renounce her rights as an heir at law of her brother Harry C. Milens, deceased) and to decree the plaintiff trustee to be vested with the title to an undivided one-fourth interest in the decedent's estate.

"Harry C. Milens died intestate February 1, 1942. He was survived by two brothers, M. G. Milens and Charles E. Milens; and two sisters, Rebecca Westerman and Bessie Eichenberg. February 25, 1935, one Fenton had obtained a $20,392.28 judgment against Bessie Eichenberg and another. July 20, 1942, Fenton, judgment creditor, filed an involuntary petition in bankruptcy against Bessie Eichenberg in the United States District Court for the Western District of Missouri, and she was adjudicated a bankrupt August 5, 1942. M. G. Milens as administrator, and M. G. Milens, Charles E. Milens, Rebecca Westerman and Bessie Eichenberg as heirs at law of Harry C. Milens, deceased, are joined as defendant's in the instant case. It is alleged in plaintiff's petition that on or about May 25, 1942, defendant Bessie Eichenberg executed and delivered to the administrator a paper writing, dated March 9, 1942, purporting to be a renunciation of any interest which she possessed as an heir at law in the estate of Harry C. Milens, deceased; that, according to the information and belief of plaintiff, Bessie Eichenberg had on one or more occasions prior to the signing of the purported written renunciation, and after the death of Harry C. Milens, attempted to orally renounce her interest in the estate; that, at the time of the purported written and oral renunciations, Bessie Eichenberg was insolvent; that she received no consideration for the purported renunciations; and that the renunciations were fraudulent as to existing creditors and constituted a fraudulent transfer of property within the meaning of the Bankruptcy Act, 11 U. S. C. A., par. 1 et seq.

"Defendants, M. G. Milens and Rebecca Westerman filed a separate general demurrer, and defendant Charles E. Milens filed a separate demurrer and motion to dismiss; the demurrers and motion to dismiss were overruled and these defendants, heirs at law, excepted and refused to plead further. M. C. Milens as administrator filed answer stating that as administrator he (though a 'stakeholder') had no interest in the outcome of the case, but requested that plaintiff be put to strict proof. Defendant Bessie Eichenberg did not plead. The trial court found for the plaintiff and decree that the purported written and oral renunciations of Bessie Eichenberg 'be and the same are hereby declared invalid and of no force and effect . . . ', and that plaintiff trustee be 'vested with and the rightful owner of the undivided interest and distributive share of Bessie Eichenberg, if any, in the estate of Harry C. Milens, deceased. . . . '. Defendants, other than Bessie Eichenberg, have appealed".

In addition to the facts stated by the Supreme Court it appears that, after the demurrers to the petition were overruled, the defendants, other than the administrator, filed no answers, but all appeared by attorney and took part in the trial of the cause.

On the 4th day of May 1942 all of the heirs of deceased entered into a written agreement with one Irving Westerman, a son of the

appellant, Rebecca Westerman, wherein, for a recited valuable consideration, it was agreed that Irving Westerman would convey certain property in the State of Oregon to Rebecca Westerman and it was further agreed that the heirs of Harry C. Milens, deceased, including Bessie Eichenberg, would transfer, convey and assign to Irving Westerman "the sum of $5,500.00 out of their respective distributive shares, if any, in the estate of" the deceased to be paid by the administrator and "shall be charged equally against the respective shares of said" heirs "that is $1,375.00 each."

Pursuant to this agreement $1,375.00 was paid to Irving Westerman by M. G. Milens on June 21, 1943 and, on the same date, a like amount was paid to him by Rebecca Westerman. The agreement was prepared by the attorney for the administrator.

It further appears that on September 19, 1942, the Trustee in Bankruptcy instituted a summary proceeding, by filing in the office of the Referee in Bankruptcy, a petition asking cancellation of the renunciation, an order on the bankrupt to assign her interest in the estate of the deceased, and to restrain the administrator from distributing the assets.

On February 4, 1943, the Referee in Bankruptcy held that the purported renunciation of Bessie Eichenberg was fraudulent, and that the trustee was vested with title to her interest in the estate, and directed the bankrupt to execute to her trustee an assignment, and that the administrator pay and turn over to the trustee an undivided one-fourth interest in the estate of the deceased, subject to the payment of the debts of the deceased. Neither the Bankrupt nor Rebecca Westerman appealed to the District Court, but M. G. Milens, both as administrator and as an individual, and Charles E. Milens, did appeal and the District Court affirmed the ruling of the Referee. M. G. Milens, as an individual, did not appeal from this ruling, but as administrator, he did, as did Charles E. Milens. The Federal Court of Appeals held that the relief granted by the lower court could not be obtained by a summary proceeding and the matter should be first settled by a plenary action in the state court and reversed the judgment of the District Court, but only as to the appellants, M. G. Milens, as administrator of the Estate of Harry C. Milens, deceased, and Charles E. Milens. [See Milens v. Bostian (2 cases) 139 Fed. (2d) 282.] Pursuant to the mandate of the Court of Appeals the District Court set aside the order and judgment only insofar as it affected Charles E. Milens and M. G. Milens, as administrator of the estate of Harry C. Milens.

It is insisted by the appellants that the petition states no cause of action; that, in view of the renunciation of her share in her brother's estate by Bessie Eichenberg, she was never vested with such estate, as her renunciation related back to the time of the death of deceased; that the renunciation was not a fraudulent transfer of her

interest in the estate; that there is no power in the trustee to revoke her renunciaion, the right to renounce being personal to Bessie Eichenberg; that he has no greater title than was vested in Bessie Eichenberg, which was none; that, therefore, the judgment of the state court vesting the trustee with title to the share of Bessie Eichenberg, if any, in the estate of deceased was erroneous and the same should be reversed.

It appears that the estate left by deceased consisted solely of personal property. There was no real estate.

The weight of authorities is to the effect that a devisee or legatee, *under a will,* is not bound to accept, but may disclaim or renounce his right under it, if he has not already accepted, and the renunciation relates back to the time the gift was made and that no estate vests in him. [Seifner et al. v. Weller, 171 S. W. (2d) 617; Sanders v. Jones et al., 147 S. W. (2d) 424; 69 C. J., pp. 967, 974; Schoonover v. Osborne, 27 A. L. R. 465 (Ia.)]. But the rule is different as to an *estate by descent.* "If the owner of property dies without a will, the title to such property passes at common law by force of the rules of law which apply to such a situation. No voluntary act on the part either of the former owner who is dead, or of the subsequent owner who takes by intestate succession, is of any legal significance. As a part of this general theory of intestate succession, the heir, next of kin, etc., have no power to prevent the passage of title to themselves by any renunciation, disclaimer and the like." [4 Page on Wills, pp. 138, 140; see, also, Coomes v. Finegan, 7 N. W. (2d) 729 (Ia.); Dueringer et al. v. Klocke et al., 149 N. Y. S. 332, 335; Watson v. Watson, 13 Conn. 83; McQuiddy v. Hirsig et al., 134 S. W. (2d) 197, 202 (Tenn.); Perkins v. Isleu, 32 S. E. (2d) 588, 591 (N. C.); 3 Washburn on Real Property, p. 4, sec. 1829; In re Kalt's Estate, 108 Pac. (2d) (Calif.); 401; In re Mahlstedt's Will, 250 N. Y. S. 628; 16 A. J., p. 925.]

We have examined Douglas et al. v. Hammel, 285 S. W. 433 and Tipton v. McClary, 54 S. W. (2d) 490, cited by appellants and find the former not in point. In the Douglas case a consideration was given, and the same seems to be true in the Tipton case, although the decision was based on another ground. The Tipton case was decided by this court. In that case the heirs of John D. McClary, other than the widow, signed a writing waiving their right in his personal estate. John D. McClary died intestate. It was held that, the widow was entitled to the entire estate; that the writing constituted a "letting go" of the personalty of the estate; that it constituted a waiver of their interest in the estate by its signers, and needed no consideration. The doctrine of renunciation was not discussed in the opinion. The use of the words "letting go" would seem to admit that the heirs, in question, had an estate when they signed the writing. Otherwise, they could not "let go" of it. This theory is inconsistent with the

doctrine of renunciation for when one renounces he refuses to accept and, therefore, never has anything to let go, although he has the right of election and may waive that right by a failure to exercise it, in which event, the law may make the election for him. We are doubtful if there was room for the application of the doctrine of waiver in the Tipton case; but certainly an insolvent person cannot defeat a creditor by the application of the doctrine of a "letting go" or a waiver of a vested tangible interest in an estate without a consideration. [Bank v. Vollrath, 135 Mo. App. 63, 65.] The rights of creditors were not involved in the Tipton case. In 18 C. J., p. 867 and 26 C. J. S., p. 1093, it is stated that an heir may relinquish his rights in an estate by an express waiver, by release or by estoppel. Undoubtedly, an heir who has the privilege of taking either under the statute of descent and distribution, or under a will, can waive his or her right to take under the statute. [16 Am. Juris, p. 878.] If such a privilege is exercised it could be properly described as a waiver by election. (Waiver and election do not necessarily mean the same thing but that is a subject that need not now be discussed.)

The only way an heir may lose or part with his title to property, acquired by descent, is by prescription, adverse possession, estoppel, gift, contract, conveyance, intestacy, testamentary disposition, and perhaps other ways, but not by renunciation. [Coomes v. Finegan, *supra*.] So, we are of the opinion that an equitable title to a one-fourth interest in deceased's estate, subject to the payment of his debts, expenses of administration, etc., was vested in Bessie Eichenberg, the bankrupt, at the time the petition in bankruptcy was filed.

However, appellants contend that no estate should be forced upon any one against his will; that the theory here taken by us is based upon the feudal system, which never existed in this country, and that that theory should not be given force and effect by our courts. It has been said that a "*Testator* cannot force a title upon a devisee or legatee". (Italics ours.) [4 Page on Will, pp. 140, 141.] This general statement is true because often a devise or legacy is accompanied by burdensome conditions. However, the law prohibiting renunciations in cases of intestate succession, is so well settled that we are not disposed to announce a different rule.

It is contended that, whereas, cannons of descent, as to real property, were borrowed largely from the common law; this does not apply to personal property; the cannons of descent as to such property being borrowed mainly from the 118 Novall of Justinian, (Roman Law) and, in this connection, appellants cite 26 C. J. S., p. 998, and Schouler on Personal Property (5 Ed.), p. 857. At Roman Law the heir could always renounce an inheritance by succession. [4 Page on Wills, p. 140.]

Appellants contend that, as our statute of descents and distributions, is largely founded upon the Roman Law we should hold that

the bankrupt was privileged to renounce her inheritance. One trouble with this contention is that the Supreme Court of this State does not agree that our statute of descents and distributions is founded upon the Roman Law, but it is stated in Perry. v. Strawbridge, 209 Mo. 621, 631: ''The general scope of our laws of descent and distribution is along the line of the common law''. In addition to this, there is no logical reason upon which to make a distinction between real and personal property, in the application of the rule.

It is insisted by the appellants that there is no reason to make any distinction between the right of a beneficiary under a will and one taking by descent to renounce the estate. There is good reason for the distinction, at least in cases where the testator, in making the bequest, places a burden upon the devisee as a condition to the enjoyment of the gift. In such cases the devisee should not be required to accept the estate. It is stated in 4 Page on Wills, p. 141, that by far the greater number of renunciations arise in cases in which the testator, making the bequest, places a burden upon the devisee, or legatee. However, the rule has been extended to cases whre the bequest is not burdensome. [See cases cited, *supra,* on this point.]

However, even though it be conceded that Bessie Eichenberg had the right to renounce her inheritance, her attempted written renunciation was void because, prior thereto, she accepted her interest in the estate, by exercising dominion over it. This occurred when she signed the contract of the 4th day of May 1942 with Irving Westerman and the other heirs. It was stated in Seifner v. Weller, 171 S. W. (2d) 617, 622: ''The testamentary gift, although beneficial, may be rejected by the beneficiary, *provided he has not already accepted it,* if the renunciation be within a reasonable time''. (Italics ours.) In Sanders v. Jones et al., 147 S. W. (2d) 424, 427, it is said: ''In 69 C. J., p. 974, Sec. 2168, it is said that a beneficiary may renounce his right under the will even though the gift is benficial to him, *provided he has not already accepted it''.* (Italics ours.)

The theory that an estate once accepted cannot thereafter be renounced is based on the doctrine of election. In Seifner v. Weller, *supra,* l. c. 623, it is said: ''Generally, a party will not be permitted to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him. This rule is sometimes said not to be strictly one of estoppel *in pais,* but rather one of *quasi* estoppel by election''.

''Any unambiguous act consistent with one (remedy) and inconsistent with others will be deemed conclusive evidence of an election''. [20 C. J., p. 20.]

The case was tried below, and has been briefed by both sides in this court, on the theory that the question of election is one of the issues properly in this case.

However, appellants say, that it is admitted in the petition, that Bessie Eichenberg, prior to the execution of the contract, had attempted orally to renounce her interest in the estate of deceased; that the evidence shows that she was induced to sign the written agreement by M. G. Milens; that the agreement recites that she agreed to transfer to Irving Westerman a portion of her interest in the estate of deceased, *if any*; that the agreement, on its face, showed that she received no benefit from it, etc. Appellants then say: "Certainly the rights of the trustee have not been affected thereby (the renunciation) and he is in no position to complain of that transaction. If that equivocal act could be considered an acceptance, Bessie Eichenberg nevertheless had the right to revoke such an election on May 25, 1942, when she executed and served on the administrator her written renunciation. . . . There is no question here that Bessie Eichenberg was fully aware of the facts or her legal rights on May 4, 1942, when she executed the agreement in question. The trustee certainly did not change his position for the worse as a result of her execution of such agreement; therefore, even if her act could be construed an acceptance, she had the right to revoke it and renounce her right as an heir."

The petition alleges that Bessie Eichenberg *attempted* orally to renounce her inheritance. No facts are stated showing what she did in this connection. There is no definite allegation in connection with this matter.

There is nothing in the record to show that Bessie Eichenberg was induced to sign the agreement. M. G. Milens said that it "was my doing". This would not necessarily mean that he used any pressure or any improper means in originating the idea, and there is no other evidence on the point.

The agreement refers to the interest in the estate, "if any". But this may have been inserted in view of the fact that the debts of the deceased might prove sufficient to render the estate insolvent. The fact, if it be a fact, that Bessie Eichenberg did not receive any financial benefit by the agreement is not controlling. These and other contentions of the appellants, relative to the question as to whether the signing of the agreement constituted an election, are not material. The agreement, on its face, contains all of the indicia of an unqualified and unequivocal election by Bessie Eichenberg to take her part of the estate of the deceased, if any. She could not elect to accept part of it and renounce the balance. If Bessie Eichenberg was not fully aware of the facts, or her legal rights, when she signed the agreement, or if there was any duress practised upon her, the burden was upon the appellants to prove these matters. [20 C. J., p. 37.]

The fact that the trustee did not change his position for the worse is not material. "While the word 'election' as applied to remedies, is not another word for estoppel, the doctrine of election of remedies differs from that of estoppel in its broader sense in that the party

invoking it need not show that he will suffer some material disadvantage unless his adversary is required to abide by his election. An election also differs from an 'estoppel *in pais*' in that it need not be acted upon by the other party to his detriment. The doctrine of election of remedies is sometimes referred to as 'waiver by election'. When used in this sense it is distinguished from estoppel in that 'waiver by election' depends upon what a party himself intends to do, while estoppel depends upon what he causes his adversary to do; estoppel results from an act which may operate to the injury of the other party, waiver may affect the opposite party beneficially; estoppel may carry the implication of fraud, 'waiver by election' does not; estoppel may arise even as between consistent remedies, but for 'waiver by election' to operate as a bar, the remedies must be inconsistent''. [20 C. J., p. 4.] [See, also, 18 A. J., p. 131.] There is nothing in Seifner v. Weller, *supra,* and the other authorities cited by appellants to the contrary. An election once made cannot be revoked. [20 C. J., p. 38; Seifner v. Weller, *supra,* l. c. 622; Sanders v. Jones et al., *supra,* l. c. 427.]

However, it is insisted by the appellants that title to personal property descends to the executor or administrator and not to the heir; that, therefore, title to the estate in question was never vested in Bessie Eichenberg, the bankrupt, and that she cannot have any title to the estate until it has been ordered distributed. It is well settled in this state that, while the legal title to personalty descends to the administrator, he is merely a trustee for the benefit of creditors, legatees, heirs and distributees and that the equitable title is in them. [Love v. White, 154 S. W. (2d) 759, 760; Richardson v. Cole, 61 S. W. 182, 183; Byers v. Weeks, 105 Mo. App. 72, 77, 78; In re Mills Estate, 162 S. W. (2d) 807, 813.] In Brewster v. Cage, 50 Sup. Ct. Rep. 115, 116, cited with approval by our Supreme Court in Love v. White, *supra,* it is stated: "The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of death." "Immediately on the death of the intestate, the persons entitled to personal property as heirs or distributees acquire a vested right, title, or estate therein, subject to the rights of creditors and the charges and expenses of the administration''. [26 C. J., p. 1100.] He has such an interest as may be assigned. [Mining Co. v. Baker, 170 Mo. App. 457; Richardson v. Cole, *supra;* Reardon v. Whalen, 29 N. E. (2d) 23, 24; U. S. F. & G. Co. v. Mathews (Calif.), 279 Pac. 655; Succession of Garcie v. Hernandez, 270 Fed. 455; 16 A. J., p. 919; 26 C. J., pp. 1118, 1119.]

Appellants cite Daly v. Wilbur, 236 S. W. 671. This case reached the Supreme Court from the Springfield Court of Appeals by certification and the majority opinion was not adopted. [See Daly v.

Wilbur, 260 S. W. 1104.] The case (236 S. W. 611) has since been cited by the Supreme Court on a question other than the assignability of the interest of an heir or devisee. [See Odom v. Langston, 173 S. W. (2d) 826, 835.]

We have examined the case of Odom v. Langston, *supra,* and the other cases cited by appellants on this point and find nothing in them contrary to the rule we have announced relative to the assignability of Bessie Eichenberg's estate.

Section 70(a) of the Bankruptcy Act (11 U. S. C. A.), Sec. 110(a) provides: "The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law, with the title of the bankrupt as of the date of the filing of the petition in bankruptcy . . . except insofar as it is to property which is held to be exempt, to all . . . (4) property transferred by him in fraud of his creditors; (5) Property including rights of action which prior to the filing of the petition *he could by any means have transferred,* or which might have been levied upon and sold under judicial process against him, or otherwise seized, empounded or sequestered. . . ."

Under these provisions, if Bessie Eichenberg could, by any means, transfer her right to her inheritance in her brother's estate, then the right to the estate vested in her trustee in bankruptcy. She was vested with an equitable title to one-fourth of her brother's estate, subject to the payment of his debts and costs of administration. "The fact whether a fund or any other property of the bankrupt is subject to seizure under execution at the time bankruptcy proceedings are instituted against him is not the test whether the interest of the bankrupt in the fund or property passes to the trustee. Under section 70a (5) of the Bankruptcy Act (Comp. St. 1913), sec. 9654, all property, which prior to the filing of the petition he could by any means have transferred, passes to the trustee." [Pollock v. Meyer Bros. Drug Co., et al., 233 Fed. 861, 869.]

It is stated in Collier in Bankruptcy, 14th Ed. (4), p. 1156: "If the interest passing by bequest, devise or inheritance actually vested in the bankrupt prior to the bankruptcy, it becomes an asset to which the trustee takes title, regardless of whether the value of such interest has been determined or distributed, or whether the estate of which it is a part is subjct to administration". [See, also, Watkins v. Bigelow (Minn.), 101 N. W. 497; In re Mosier (Vt.), 112 Fed. 137; Kleinschmidt v. Schroeter, 94 Fed. (2d) 707; Horton v. Moore, 110 Fed. (2d) 189, 191; Board of Trade of City of Chicago v. Johnson, 44 Sup. Ct. Rep. 232; In re Marster's, 101 Fed. (2d) 365.]

However, it is claimed that section 1562, R. S. Mo. 1939, forbids a garnishment of an administrator prior to the time that the order of distribution is made and that, the process of garnishment and credi-

tor's bill are, in effect, instituted for the same purpose. Beyond doubt this is the law. [Geist v. City of St. Louis, 156 Mo. 643, 650.]

The decree of the court did not direct the administrator to pay anything to anybody and it cannot be said to involve an equitable garnishment. It is true that the petition prayed that the administrator be directed to pay and turn over to the trustee an undivided one-fourth interest in the estate of the deceased, subject to the payment of debts and costs of administration; but it also prays that the trustee be vested with absolute title to an undivided one-fourth interest in the estate. The allegation of the petition is broad enough to support the judgment. The court was not under the necessity of granting all the relief prayed for in the petition. Proceedings in equity for the purpose of fixing the status of the plaintiff as an heir or distributee are recognized in this state. Suits in equity in which plaintiff seeks to have himself declared to be the adopted child and a legal heir of the deceased are in point. [See Love v. White, *supra*; Smith v. Oliver, 157 S. W. (2d) 558.] The Probate Court has no jurisdiction over a proceeding of this kind. Jurisdiction is in the Circuit Court. [McClure v. Baker, 216 S. W. 1018; In re Wood Estate, 138 Mo. App. 258; State v. Lillibridge, 293 S. W. 116, 117.] It was within the province of the trial court to grant the relief accorded in this case.

The case of Cook v. McCoy, 118 S. W. (2d) 1043, cited by appellants is not in point. There plaintiff sued by way of equitable garnishment. The garnishee, the administrator of the estate, had not made a final settlement. It was alleged by the plaintiff that the administrator "plans and intends to *surreptitiously* make his final settlement, obtain an order of distribution in said estate, and to thereupon immediately make distribution of said estate to himself as a distributee", etc. Plaintiff sought to have the interest of the defendant in the estate impounded by the court to be applied, under the direction and control of the court, to the payment of plaintiff's judgment. The court held that the action would not lie. In the case at bar no such relief was granted by the decree of the court below.

Plaintiff asks that the judgment against M. G. Milens and Rebecca Westerman be affirmed on another ground. In this connection it is insisted that these appellants did not appeal to the Federal Court of Appeals in the bankruptcy proceedings. While plaintiff does not say, in so many words, that the judgment in the bankruptcy court became final, as to those who did not appeal, on the theory of *res adjudicata,* that is really the point involved. In this connection appellants contend that the Federal Court of Appeals held that the bankruptcy court had no jurisdiction to render the judgment and that jurisdiction over the subject matter could not be waived by the failure of the parties mentioned to appeal. However, plaintiff insists that kind of jurisdiction is not involved. We find that the petition in the case at

bar does not directly, or indirectly, attempt to recover judgment against any of the defendants on the theory of *res adjudicata;* but the defendants are sued under allegations applying to all of them. This point is ruled against plaintiff.

We are of the opinion that the judgment should be affirmed except as to the administrator. Plaintiff asks that the appeal be dismissed as to him and, we are of the opinion, that this should be done. The administrator is not an aggrieved party within the meaning of the statutes relating to appeals. [See Love v. White, *supra*; Smith v. Oliver, *supra*.]

The appeal of M. G. Milens, administrator of the estate of Harry C. Milens, deceased, is dismissed. The judgment as to the other appellants is affirmed. All concur.