FRANK B. WILLIAMS, RESPONDENT, v. ROSCOE C. PATTERSON, ANCILLARY ADMINISTRATOR OF THE ESTATE OF THOMAS WILLIAMS, DECEASED, APPELLANT.—218 SW (2) 156.

Springfield Court of Appeals.   February 2, 1949.

Rehearing denied March 4, 1949.

*Kirby W. Patterson, Farrington & Curtis, Richard Farrington* for appellant.

136

*John W. Miller* and *John H. Fairman* for Respondent.

McDOWELL, P. J.—This is an action to enforce an attorney's lien in the sum of $1833.33, against the funds in possession of the ancillary

administrator of the estate of Thomas Williams. The petition was filed April 4th, 1945, in Division No. 2, of the Circuit Court of Greene County, Missouri, and by change of venue was transferred to Division No. 1, where it was tried before the court July 22nd, 1947, and judgment rendered in favor of plaintiff in the amount of $1833.33 with $256.65 interest, making a total judgment of $2089.97. This judgment was declared a lien against the funds of the estate of Thomas Williams in the hands of the ancillary administrator, Roscoe C. Patterson. From this judgment the defendant appeals to this court.

The action was founded on contract and stated in two counts. In the first count of plaintiff's second amended petition he alleged that Louise Williams, wife of John R. Williams, died at Springfield, Missouri, September 14th, 1942, leaving as her only heir John R. Williams, who was, at the time, confined in the Missouri State Hospital No. 3, at Nevada, Missouri; that Walter H. Henderson was appointed, by the Probate Court of Greene County, Missouri, administrator of her estate, which inventoried $76,826.79.

Plaintiff states that Janie L. Baker, sister of John R. Williams, and Mary Ellen Getz, a niece of Williams, at the request of John R. Williams, came to Springfield, Missouri, and employed plaintiff, November 11th, 1942, to take steps to restore John R. Williams to his sanity and to restore to John R. Williams the real and personal property inventoried in the estate of Louise Williams, deceased. The petition states that Janie L. Baker and Mary Ellen Getz were merely acting by reason of kinship of John R. Williams and in his behalf, and that the contract provided that they themselves would not be personally liable for the attorney fees provided for therein, for the protection of John R. Williams and his property. The contract provided that plaintiff would be paid a contingent fee for his services out of the amount recovered for the said John R. Williams. This contract was signed by Janie L. Baker and Mary Ellen Getz and by the plaintiff and was later ratified and signed by John R. Williams.

Plaintiff states in Count No. 1, that on the same date a supplemental agreement was prepared and later signed by all of the legal heirs of John R. Williams, some twenty-two in number, in which they all agreed to the employment of plaintiff to render the services enumerated in the contract for John R. Williams, under the terms of the original agreement, and bound the share or interest that they might finally have in the estate of John R. Williams as security to the payment of said contingent fee.

Plaintiff alleges that the said Thomas R. Williams was one of the original signers of said supplemental agreement and, at the time, was heir apparent of John R. Williams' estate and, as such, was entitled to receive a one-sixth interest upon the death of the said John R. Williams; that said John R. Williams died January 14th, 1943.

Plaintiff further alleges in count no. 1 of the petition that following the death of John R. Williams, C. A. Morgan, an attorney from the State of Kansas, acting in behalf of Thomas Williams and the other legal heirs of John R. Williams, and as the authorized agent of such heirs, negotiated another agreement, January 23rd, 1943, with plaintiff, relative to his continued services to be performed after the death of John R. Williams to and for the estates of John R. Williams and Louise Williams; that this agreement was made between plaintiff and Thomas Williams, by his duly authorized agent, and with all the other heirs of John R. Williams, which superseded the prior agreements. Plaintiff pleads that, in this agreement, he agreed to accept a stipulated fee of a less amount, to wit: $11,000.00, in lieu of the contingent fee of one-third provided in the other contract; that this stipulated fee was to be deducted from the distributive share of the John R. Williams' estate in the estate of Louise Williams, deceased. It was provided in this agreement that Ben M. Neale was to be appointed administrator of the estate of John R. Williams and of the estate of Louise Williams when that office was vacated by Walter H. Henderson, and that Neale would receive but one commission for both estates; that Neale was appointed administrator of the two estates, served until they were closed and received but one commission for his services. Plaintiff pleads that by the terms of this agreement he agreed to act as attorney for Ben M. Neale, administrator of both of the estates, and to render all legal services required in said estates, including final settlement thereof, without other fees except the stipulated $11,000.00.

Plaintiff pleads that he accepted the latter agreement, relinquished his claim for the contingent fee and bound himself to perform additional services to be rendered both estates, and the administrator thereof, as provided in the new agreement, and that he has fully performed his part of the agreement so made with all the heirs.

Plaintiff pleads that the Louise Williams estate was settled and, in final settlement, the estate was ordered distributed to the administrator of John R. Williams, and that in the final settlement and closing of the John R. Williams estate, the one-sixth part thereof, to wit, $9,666.66, which would have been distributed to Thomas Williams, had he survived, was demanded by and distributed to the defendant, ancillary administrator of Thomas Williams' estate, on December 7th, 1944. Plaintiff pleads that by virtue of the agreement aforesaid, one-sixth of plaintiff's stipulated fee, to wit, $1833.33, was "allocable" to and deductible from said distributive share but, because demanded by the ancillary administrator, the whole amount was paid to him, and plaintiff's part thereof is now in defendant's possession and is claimed by him as a part of the estate of Thomas Williams, deceased; that plaintiff has demanded payment of said sum from the defendant but payment was refused.

Plaintiff prays judgment for $1833.33 and for interest.

In Count No. 2, plaintiff states that he had a lien on the funds paid to the ancillary administrator out of the estate of John R. Williams, as security for his stipulated fee. Plaintiff states that the entire estate of Louise Williams, deceased, after the payments of debts and expenses, was distributable property and was distributed to the administrator of the estate of John R. Williams; that the estate of John R. Williams was brought to a conclusion for distribution to his legal heirs, and plaintiff's services were accepted and used by the administrator of both estates and by the legal heirs of John R. Williams, as provided in the aforesaid agreement. Plaintiff pleads that the administrator of the Thomas Williams estate refused to join with the other heirs in authorizing payment of the stipulated fee out of the distributive share of John R. Williams' estate and was holding up the distribution of the whole estate until he was paid the one-sixth distributable share of the estate of Thomas Williams, undiminished by the payment of plaintiff's attorney's fee therefrom. Plaintiff pleads that all the parties acted upon the theory that the fees due him for services rendered both estates was referable to the contract made with the heirs of John R. Williams and were not to be expenses of either estate, and that payment by the administrator of the same was excluded by the terms of said heir's contract. Plaintiff pleads that the heirs, save the estate of Thomas R. Williams, authorized the administrator of John R. Williams' estate to pay their proportionate share of the fee as provided for in the modified agreement, which has been done. Plaintiff pleads that all payment has been made of his fee except the one-sixth interest thereof, to wit: $1833.33, which is the amount of his fee "allocable" to the distributive share of Thomas Williams in the estate of John R. Williams, deceased; that he is entitled to an equitable lien against said share paid to defendant as security for the payment of said stipulated fee and that when defendant received payment of said share he had full knowledge thereof and received the same charged with said equitable lien. Plaintiff prays judgment for the enforcement of the equitable lien for $1833.33, and for interest and costs.

In defendant's answer to plaintiff's second amended petition he admits that plaintiff is an attorney, practicing at the bar of this court, and that he is ancillary administrator of the estate of Thomas Williams, deceased. He admits that Thomas Williams died at Burton, Kansas, February 5th, 1944, and that he was appointed ancillary administrator of his estate by the Probate Court of Greene County, Missouri, April 15th, 1944. Defendant admits that Thomas Williams was a brother of John R. Williams and a legal heir of his estate. Defendant admits that John R. Williams was the husband of Louise Williams and resided at Springfield, Missouri, and that he was the only heir of Louise Williams. Defendant admits the making of the

contract of November 11th, 1942. Defendant admits the signing of the supplemental agreement, made at the same time and on the same date.

Defendant affirmatively pleads that John R. Williams was adjudicated insane July 6th, 1937, by the Probate Court of Greene County, Missouri, and a guardian and curator was appointed for him. Defendant pleads that this order of the court was never revoked during the lifetime of John R. Williams, and that the contract was not submitted to such guardian and curator or to the Probate Court of Greene County; that Janie L. Baker and Mary Ellen Getz had no legal authority to sign the contract for John R. Williams, and the signature of John R. Williams had no legal effect and defendant says that this contract was a nullity. Defendant affirmatively pleads that the fee provided in the original contract was unconscionable and exorbitant as the services provided for were unnecessary.

Defendant pleads that the next of kin and heirs apparent of John R. Williams agreed in the supplemental agreement, signed on date of the original agreement, that in case of the death of John R. Williams, pending the consummation of the original agreement, the contingent fee provided for should bind them and their interest as heirs of John R. Williams, and defendant states that, by said supplemental agreement, plaintiff, on his part, agreed to represent said heirs apparent upon the same terms as mentioned in the original agreement. Defendant makes these contracts relied on in plaintiff's petition, a part of his answer in exhibits 1 and 2. Defendant states that the supplemental agreement did not vitalize the original agreement, which was void. Defendant pleads that in the supplemental agreement the services provided for and to be performed by plaintiff were unnecessary and that, by reason of the premises, the agreement is unconscionable, exorbitant and void.

In paragraph 12 of defendant's answer, he admits plaintiff accepted employment by the heirs, including Thomas Williams, who signed the supplemental agreement, and was entitled to receive one-sixth interest of Thomas Williams' part of the estate, upon the death of John R. Williams, but denies plaintiff rendered any substantial service.

Defendant denies that the contract entered into between plaintiff and C. A. Morgan, representing all the heirs, including Thomas Williams, on January 23rd, 1943, was for services to be performed for the estate of Louise Williams and John R. Williams, and for the heirs of John R. Williams, after his death, and states that the contract was one modifying the original supplemental agreements. Defendant attaches and makes a part of his answer the contract designated as exhibit No. 3. The defendant admits the execution of this contract, designated as exhibit No. 3, admits that plaintiff agreed to the fee of $11,000.00 in lieu of the contingent fee and pleads that

the fee was to be paid in the regular course of administration and was to be deducted from the distributive share of John R. Williams' estate in the estate of Louise Williams. Defendant denies that the fee was paid in the regular course of administration of the estate of Louise Williams and denies that claim can be asserted against defendant intestate as an heir of Louise Williams. Defendant denies that plaintiff rendered any substantial service to the administrator of the estates of John R. and Louise Williams. Defendant admits the closing and the final distribution of the estates as pleaded in the petition but denies that plaintiff's fee of $1833.33 was "allocable" to and deductible from the distributive share of Thomas Williams, paid to the defendant. Defendant admits that he possesses said share, as ancillary administrator of the estate of Thomas Williams, and that he refused to pay any part thereof to plaintiff and that he now refuses unless ordered to do so by the court. Defendant denies every allegation in plaintiff's petition not specifically denied or admitted to be true.

In answer to the second count of plaintiff's amended petition defendant pleads that all the contracts, including the original agreement and supplemental agreement, executed November 11th, 1942, and the modifying agreement executed January 23rd, 1943, constituted but one contract; that, if there was any consideration for the defendant intestate, it was plaintiff's agreement to represent him and his interest and, after death, to secure to him and his estate one-sixth distributive share of the estate of John R. Williams. Defendant pleads that if the agreement was binding upon Thomas Williams, which defendant denies, it was the duty of plaintiff, at all times, to devote his ability, skill and diligence to protect the interest of Thomas Williams in the estate of John R. Williams; that plaintiff had a duty to refrain from any alliance connected with the administration of said estate that would place him in a position adverse to the interest of Thomas Williams. Defendant pleads that plaintiff breached his duty and contract to represent Thomas Williams as an attorney in the administration of John R. Williams' estate by entering into a contract with C. A. Morgan to represent other heirs of John R. Williams to defeat the interest of Thomas Williams and Thomas Williams' only legal representative in said estate of his one-sixth interest therein; that said contract was dated April 19th, 1944, signed by plaintiff and C. A. Morgan, in which plaintiff was to receive a contingent fee of one-half of the interest of Thomas Williams in the estate of John R. Williams. Defendant makes this contract a part of his answer and attached it as exhibit 4. Defendant especially pleads that plaintiff, in his attempt to defeat the interest of Thomas Williams in the estate of John R. Williams, filed a petition in behalf of the other legal heirs of John R. Williams, praying the one-sixth distributive share of Thomas Williams be paid

to said petitioners; that said petition declared that Thomas Williams had no rights, title or interest or share in the estate of John R. Williams. Defendant made this petition a part of his answer as exhibit 5. This petition was overruled by the Probate Court. Defendant pleads that plaintiff forfeited any possible claims he might have against the estate of Thomas Williams because of such conduct. Defendant pleads that plaintiff attempted to secure an additional fee of $1200.00 for representing the estate of Louise Williams in the Probate Court of Greene County, Missouri, and filed claim therefor, which claim is made a part of his answer as exhibit 6.

Before stating the facts, as shown by the evidence, we hereby set out the contracts introduced in evidence as plaintiff's exhibits A and B, which are in words and figures as follows:

"AGREEMENT

"Whereas, Louise Williams died intestate in Greene County, Missouri, on the 14th day of September, 1942, leaving no children or their descendants, no father, mother, brother, or sister, or their descendants, but leaving a surviving husband, John R. Williams, who, at the present time, is in State Hospital No. 3, at Nevada, Missouri, and is under guardianship, his guardian being Walter H. Henderson, of Springfield, Missouri, appointed by the Probate Court of Greene County, Missouri, and

"Whereas, the undersigned, Janie L. Baker, the wife of A. S. Baker, of Burton, Kansas, Route 1, is a sister of said John R. Williams, and the undersigned, Mrs. Mary Ellen Getz, of 715 East 6th Street, Newton, Kansas, is a niece of said John R. Williams, and

"Whereas, they desire to take steps for the purpose of protecting the interests of said John R. Williams in the estate of his late wife, Louise Williams, which is in course of administration in the Probate Court of Greene County, Missouri, having been requested so to do by said John R. Williams;

"Now, Therefore, the undersigned, Mrs. Janie L. Baker and Mrs. Mary Ellen Getz, acting for and in behalf of the said John R. Williams, by virtue of their kinship to him, but not intending hereby to bind themselves personally, do hereby, for John R. Williams, employ the undersigned, Frank B. Williams of Springfield, Missouri, as attorney for said John R. Williams, to take such steps as he shall deem necessary for the purpose of (a) restoring the said John R. Williams to his competency, if the facts so justify, and (b) for the purpose of recovering for said John R. Williams the real and personal property inventoried in the estate of said Louise Williams, and in behalf of said John R. Williams agree that said attorney shall have for his services a contingent fee of 33⅓ per cent of any and all amounts so recovered, whether by way of suit or settlement, or before or after suit is brought, and the said attorney hereby accepts said employment and agrees to the terms thereof.

"It is understood and agreed between the parties hereto that the terms of this contract shall be submitted to said John R. Williams, who, though confined in said asylum, understands and has mental capacity to understand this matter of business, with the object in view of having this contract ratified and confirmed by him.

"In witness whereof, we have hereunto set our hands to duplicate originals at Springfield, Greene County, Missouri, this 11th day of November, 1942."

The above agreement is signed by Janie L. Baker, Mrs: Mary Ellen Getz and Frank B. Williams, Attorney. On the margin there is the following: "I have read this agreement and approve of it and understand it. (Signed) J. R. Williams." This agreement is marked Plaintiff's Exhibit "A".

Attached to the above agreement is the following Supplemental Agreement which is in words and figures as follows:

"SUPPLEMENTAL AGREEMENT

"Supplementing the attached agreement, which has been signed by Janie L. Baker and Mrs. Mary Ellen Getz, and by Frank B. Williams, attorney, the undersigned, Janie L. Baker and Mary Ellen Getz, and the undersigned next of kin of John R. Williams, who is referred to in the attached agreement, hereby agree that in case of the death of the said John R. Williams pending the consummation of the attached Agreement we, as heirs apparent of his estate, agree that the contingent fee contract provided for in the attached Agreement shall bind us and our share and interest as such heirs of John R. Williams, deceased, and the said attorney agrees to represent said heirs apparent upon the same terms as mentioned in the attached Agreement.

"In witness whereof, we have hereunto set our hands to duplicate originals at Springfield, Greene County, Missouri, this 11th day of November, 1942."

This Supplemental Agreement is signed by Frank B. Williams, Attorney, Janie L. Baker, Mrs. Mary Ellen Getz and all the other heirs of John R. Williams.

Here follows a Modified Contract, dated at Springfield, January 23rd, 1943, and signed by C. A. Morgan, Attorney for heirs of J. R. Williams, deceased, and Ben M. Neale:

"By mutual agreement this contract is modified as follows: 1. Williams will accept Eleven Thousand Dollars, cash fee, in lieu of the contingent fee herein specified, to be paid in regular course of administration and to be deducted from the distributive share of John R. Williams estate in the estate of Louise Williams, deceased. 2. In addition to services called for by this contract Williams will act as attorney for Ben M. Neale, who is to be appointed administrator of the estate of John R. Williams, deceased, and who is to be appointed administrator of the estate of Louise Williams, deceased, when the office is vacated by Walter H. Henderson, the present administrator,

Williams rendering all legal services required in both of said estates to and including the final settlements thereof, without other fee, charge or compensation than the eleven thousand dollars above mentioned. 3. Ben M. Neale will serve as administrator of said estate of Louise Williams, deceased, charging and receiving for his services the regular statutory fees of five per cent on all disbursements, as allowed to administrator. But in case he is appointed administrator of John R. Williams estate and Louise Williams estate only one five per cent statutory fee will be charged for both estates but may be claimed in either estate at his option. 4. Williams is to be reimbursed for all outlays and expenses, disbursements and advances made by him heretofore for the benefit of John R. Williams or in the management of affairs under this contract, such reimbursement to be made out of the estate of John R. Williams, deceased.'' This contract is marked plaintiff's exhibit ''B''.

Plaintiff's theory in this case is that he entered into written contracts with John R. Williams, in his lifetime, and his potential legal heirs, including Thomas Williams, to render certain legal services to John R. Williams and, after his death, to the estates of John R. Williams and Louise Williams; that, under said contracts of employment, the heirs of John R. Williams, including Thomas Williams, bound their interest proportionately as security for the payment of such attorney's fee, which was stipulated in the contract to be $11,000.00, and that said heirs agreed that said stipulated fee of $11,000.00 should be paid out of the distributable share of the estate of John R. Williams, in the estate of Louise Williams. Plaintiff says that as a result of the legal services he rendered under the contracts, the estate of Louise Williams was distributed to the estate of John R. Williams, and that the share of Thomas Williams, intestate, in that estate so distributed to John R. Williams' estate was $9,666.66, and that this amount of money was indebted for one-sixth of plaintiff's fee of $11,000.00, or $1833.33, and that plaintiff had a lien on said amount for services rendered as an attorney under said contracts. Plaintiff says that the administrator of the estate of John R. Williams paid to the defendant, as ancillary administrator of Thomas Williams, deceased, the full amount of the distributable share of Thomas Williams in the estate of John R. Williams, which was received from the estate of Louise Williams, as a result of the legal services rendered by plaintiff under his written contracts with John R. Williams and his legal heirs, including Thomas Williams, intestate; that said money was received by defendant, knowing plaintiff was entitled to $1833.33 for the legal services so rendered, and knowing that plaintiff had a lien on said money so received. Plaintiff seeks the aid of equity to recover judgment for the sum of $1833.33 against this fund, so distributed to the defendant as ancillary administrator of the estate of Thomas Williams, and that it be declared a lien against said fund or

one-sixth so distributed from the estate of John R. Williams to the estate of Thomas Williams.

It is plaintiff's theory that, under the written contracts relied on for recovery in this case, he did not act as attorney for Thomas Williams, nor did he act as attorney for Thomas Williams' estate nor for the widow of Thomas Williams. He says that the employment provided for in said written contracts was for services to John R. Williams, then living, and that after his death, for certain additional services to the administrator of John R. Williams' estate and to the administrator of Louise Williams' estate. The plaintiff contends that the whole agreement controlling the interest of the parties herein is covered by the contract made between himself and the legal heirs of John R. Williams, dated January 14th, 1943; and plaintiff says that in this contract he agreed to accept a lesser fee of $11,000.00 for his legal services in lieu of one-third of the distributable estate of Louise Williams to John R. Williams.

Defendant's theory of the case is that plaintiff's rights are determined by all the contracts and that the agreement of January 23rd, 1943, was merely a modification of the original agreements. Defendant's contention is that when plaintiff accepted employment to represent Thomas Williams, he was obligated to have his share in the estate of John R. Williams distributed to him and, after his death, it was his duty to see that his one-sixth interest was distributable to his estate; that plaintiff was under a duty to reduce the physical possession of Thomas Williams' one-sixth interest in the estate of John R. Williams to him or, in case of his death, to his legal representatives. Defendant contends that the death of Thomas Williams in no way relieved plaintiff from his obligation to Thomas Williams. It is the contention of the defendant that plaintiff cannot recover because he accepted employment from the other legal heirs of John R. Williams to have the interest of Thomas Williams in the estate of John R. Williams distributed to such other heirs on the theory that Thomas Williams died before the estate of Louise Williams was distributed to John R. Williams' estate and thus sought to destroy the interest of Thomas Williams in said estate. Defendant says that this employment was adverse to the interest of Thomas Williams and constituted an abandonment and a breach of the contract between plaintiff and Thomas Williams and plaintiff lost his rights and his attorney's lien against the one-sixth interest of Thomas Williams and is not entitled to recover.

Defendant further contends that plaintiff cannot recover as a matter of equity because he rendered no substantial service to the estate of John R. Williams or to the estate of Louise Williams, and that the $11,000.00 fee is unconscionable and exorbitant. Defendant complains of other errors as to the exclusion and admission of certain testimony which we will consider in the opinion, and also complains

that he was deprived of a jury trial by the lower court and that the trial court did not have jurisdiction in the subject matter. Defendant also contends that the trial court committed error in striking certain parts of his answer. All of these errors will be considered in the opinion.

We here state such facts as shown by the evidence in the trial as we deem necessary for decision of the issues involved. Louise Williams died intestate September 14th, 1942, leaving as her sole and only heir her husband, John R. Williams. They were residents of Springfield, Missouri. Her estate inventoried $76,826.79, and consisted of personal property and one piece of real estate valued at $5,000.00. The real estate was held by the entirety. At the time of the death of Louise Williams it was not definitely known whether she left surviving any kindred entitled to inherit her estate, and it was also uncertain as to whether or not the estate she left, or a considerable amount thereof, had not been accumulated by John R. Williams. Thirty days after the death of Louise Williams, Walter H. Henderson was appointed administrator of her estate by the Probate Court of Greene County, Missouri. In the application for appointment of administrator he stated that the heirs were unknown and there were none living in Missouri entitled to priority of administration. No notice of the application was served on John R. Williams.

The Springfield Security Company, a corporation, owned and controlled by Walter H. Henderson, filed a claim against the estate for $8,000.00 for financial advice. Another claim was filed by Mr. and Mrs. W. L. Cunningham for $1500.00 for services rendered Louise Williams. The administrator waived service on both claims and was offering no opposition to them.

John R. Williams was admitted as a private patient to State Hospital for Insane at Nevada, Missouri, at the request of his wife, April 18th, 1929, and shortly after his admittance he became a county patient and was continuously in the hospital until his release in November, 1942. In order to secure an inheritance from a relative in Kansas, Walter H. Henderson filed an affidavit in the Probate Court of Greene County, asking that John R. Williams be adjudged incompetent and prayed that he be appointed guardian and curator of his person and estate. On July 6th, 1937, the Probate Court of Greene County, Missouri, adjudicated John R. Williams incompetent and appointed Walter H. Henderson his guardian, who qualified and gave bond. This estate was soon exhausted, the funds being paid to the wife of John R. Williams, and the guardianship was suspended in June, 1939, by the Probate Court. After the death of Louise Williams, upon application of Henderson, the Probate Court restored the estate of John R. Williams, insane, to the docket, but no bond was given.

On November 10th, 1942, Mrs. Janie L. Baker, a sister of John R. Williams, and Mary Ellen Getz, a niece, who lived in the State of Kansas, came to Springfield, Missouri, at the request of John R. Williams, to do something about the estate of his wife, Louise Williams. They called upon Walter H. Henderson, administrator, on November 10th, 1942, but learned very little about Louise Williams' estate. They had been instructed by John R. Williams to consult Charles Newman, an attorney in Springfield. They went to his office in the Woodruff Building but Mr. Newman was out of town. They talked to his partner, Ben M. Neale. Mr. Neale informed these parties that he was not sure his firm could represent them, but to come back the following morning. Upon their return he advised them that his firm was not in a position to represent Mr. Williams. They asked Mr. Neale to suggest some other attorney or attorneys and he did suggest others, including plaintiff, Frank B. Williams, whose office was on the same floor in the Woodruff Building. Janie Baker, her husband and Mrs. Getz asked Ben M. Neale to take them to the office of plaintiff, which he did. On November 11th, 1942, they entered into a written contract of employment, signed by themselves, for John R. Williams, and by the plaintiff, and which was, on the following day approved by John R. Williams at Nevada, Missouri. On the same date of this written agreement of employment, a supplemental agreement was prepared, which was later signed by all the heirs at law of John R. Williams and attached to the original agreement. (These agreements are set out in full in this opinion and we will not here state the contents thereof.) The testimony shows that at the time John R. Williams approved the written agreement with plaintiff, his mind was clear, that he understood his business in Springfield, and that he believed it was not being properly cared for and that he wanted the services of plaintiff.

The plaintiff in this case, on the same day of the approval of the contracts above set out, secured the release of John R. Williams from the asylum, and the next day Williams was removed to a hospital in Kansas, near his relatives. He also, at that time, prepared an affidavit, signed by Janie L. Baker, a sister of Williams, to have John R. Williams restored to sanity. This affidavit was filed in the Probate Court of Greene County. The evidence shows that plaintiff also took immediate action for the protection of John R. Williams' estate, to have Walter H. Henderson removed as administrator of the estate of Louise Williams, and to prevent the claims filed against such estate from being allowed. Plaintiff also took immediate action to have Walter H. Henderson discharged as guardian of John R. Williams. The evidence shows that pending the carrying out of the services by plaintiff, under the contracts, and before the consummation thereof, John R. Williams died in Newton Kansas, January 14th, 1943, four months after the death of his wife and two months after he was re-

leased from the hospital. He was a resident of Greene County, Missouri, at the time, of his death. He had been in the asylum thirteen years, from April 18th, 1929 to November 13th, 1942, and, except for the first month, was kept there as a pauper patient.

After the death of John R. Williams, his legal heirs, including Thomas Williams, retained Von der Heiden & Morgan of Newton, Kansas, to negotiate a reduction in plaintiff's fee, under the contracts made November 11th, 1942, which provided for a contingent fee of one-third of the assets distributable to the estate of John R. Williams from the estate of his wife, Louise Williams.

Pursuant to this employment, C. A. Morgan came to Springfield, Missouri, and negotiated an agreement to modify the original agreement. This modified agreement was entered into January 23rd, 1943, and was written in long hand on the back of the original agreement, which was admitted in evidence as plaintiff's exhibit ''B''. (We have set out this modified contract in full in this opinion and will not restate its terms here.) After this modified agreement, plaintiff, under its terms, made settlement of claims filed by the Springfield Security Company and the Cunningham claim. The Security Company claim was settled March 6th, 1943, for $4500.00 and the Cunningham claim for $750.00. An agreement was made with Henderson to withdraw as de facto administrator and a claim of Henderson's for $3000.00 was allowed against the estate. Under this agreement Henderson did not receive any pay for acting as administrator and his attorneys, employed to represent him in said estate, were discharged without fee. Ben M. Neale was appointed administrator of both estates, to wit: the estates of Louise Williams and John R. Williams, as provided for in the modifying agreement. Plaintiff, working with administrator, Ben M. Neale, settled all claims of heirs apparent, of the estate of Louise Williams, without court action, leaving John R. Williams the sole and only heir of the estate of his wife.

The evidence shows that Thomas Williams approved the modifying agreement made with plaintiff and agreed to all its terms.

Thomas Williams died intestate at his home in Burton, Kansas, February 5th, 1944, leaving as his only heir, capable of inheritance under the laws of Kansas, Malinda Williams, his wife. She was appointed as administratrix of his estate in Kansas and died before this case was tried. Malinda Williams is survived by a sister and twenty or more nieces and nephews, next of kin and· heirs at law.

Appellant was appointed ancillary administrator by the Probate Court of Greene County, Missouri, of the estate of Thomas Williams, April 15th, 1944. The purpose of this appointment was to secure the share of Thomas Williams in the property of his deceased brother, John R. Williams.

The evidence shows that after the death of Thomas Williams, his widow was represented by the law firm of Tincher, Raleigh & Tincher,

of Hutchinson, Kansas.  This firm represented the domiciliary estate
of Thomas Williams.  The evidence shows that Thomas Williams, in
his lifetime, had been represented by attorneys Von der Heiden &
Morgan, of Newton, Kansas.  Roscoe C. Patterson, ancillary admin-
istrator of Thomas Williams' estate, and defendant herein, came into
the case through employment by Malinda Williams, domiciliary ad-
ministratrix of Thomas Williams, deceased.

Plaintiff entered into a written contract with the legal heirs of
John R. Williams to have the interest of Thomas Williams, in the
estate of John R. Williams, distributed to them for a contingent fee
of fifty per cent.  He filed a petition in the Probate Court of Greene
County, dated December 7th, 1944, pursuant to this contract of em-
ployment, seeking the distribution of the interest of Thomas Williams
in said estate to the living heirs of John R. Williams.  This petition
was admitted in evidence as defendant's exhibit 3, and was limited
to show only a breach of contract.  Plaintiff objected to the Probate
Court against the payment of Thomas Williams' interest to his an-
cillary administrator in the following words: "Thomas Williams
did not have any interest in the estate.  He died before the distribu-
tion of the Louise Williams estate to the John R. Williams' estate,
and whatever interest he has would go, under the law, to his blood
relatives."

The contract of employment between plaintiff and the legal heirs of
John R. Williams to defeat the interest of Thomas Williams is in
evidence as defendant's exhibit 2.

On March 24th, 1944, a partition suit was filed by Janie Baker
and Ben M. Neale, administrator of the estate of John R. Williams,
against Malinda Williams, et al., to have the home partitioned.  Plain-
tiff acted as attorney for partitioners and received a fee of $500.00.

The evidence shows that the plaintiff, at the request of Ben M.
Neale, administrator of the estate of Louise Williams, prepared and
filed a claim for $1200.00 attorney's fee.  The testimony shows that
this was done, not to receive an additional fee to the stipulated fee
of $11,000.00, but to aid the estate in tax matters.  The claim was
withdrawn and never presented for allowance.  The evidence shows
that the entire one-sixth distributive share of Thomas Williams in the
estate of John R. Williams, amounting to $9,666.66, was paid to the
defendant, ancillary administrator, April 5th, 1945.

The evidence shows that defendant demanded a trial by jury which
was refused.  The evidence further shows that the defendant offered
in evidence the 1943 Supplemental of the General Statutes of Kansas
of 1935, which law provides that the surviving spouse takes all of
the personal property where there are no children, and that the court
refused said offer.  The evidence further shows that the court re-
fused to admit evidence on the part of the defendant to the effect
that plaintiff made an offer January 24th, 1945, to the defendant

that he would agree to distribution of the interest of Thomas Williams in the estate of John Williams, if defendant would agree that plaintiff's fee, sued for herein, and the fee of attorneys Von der Heiden and Morgan against the estate, be deducted from said share, and, that at the time plaintiff stated that he was still resisting the payment of Thomas Williams' distributive share in the estate of John R. Williams to the defendant. The evidence further shows that the court refused to permit the defendant to show by the witness, Ben M. Neale, that in a conference in Mr. Neale's office, September 2nd, 1944, when plaintiff and the defendant were present, plaintiff objected to the paying of the share of Thomas Williams to the ancillary administrator of Thomas Williams, but recommended a settlement of one-half the share.

The trial court also refused to let this evidence be placed in the record for consideration on appeal under Section 847.114, Mo. R. S. A.

The trial court entered the following judgment:

"Judgment for plaintiff in accordance with the prayer of plaintiff's second amended petition. The plaintiff is entitled to recover from defendant, as ancillary administrator in the estate of Thomas Williams, deceased, the sum of $1833.33, with interest at the rate of six per cent (6%) per annum, from the date plaintiff filed suit against defendant, to wit: April 14, 1945, amounting to $256.64, and in the total amount of $2,089.87, and that amount is declared a lien against the funds of said estate in the hands of said defendant. The defendant is taxed with the cost of this suit."

Appellant, in his first assignment of error, states that the court erred in rendering judgment for the plaintiff for the reason that plaintiff has waived and abandoned any right under his contract to recover against the Thomas Williams' estate, for the reason that he accepted employment to prevent said estate from receiving the funds in question.

Respondent bases his claim for recovery herein on the specific contract made between himself and Thomas Williams, intestate.

To determine the rights of the parties we must state the legal effect of the contract relied upon. The first contract, entered into the 14th day of September, 1942, and introduced in evidence as plaintiff's exhibit "A", is in two parts.

The first agreement is between plaintiff and John R. Williams. In this agreement plaintiff agrees to represent said Williams, as his attorney, to take such steps as he deems necessary to have John R. Williams restored to his competency, if the facts so justify, and secondly, plaintiff agreed to take such steps as he deemed necessary to recover for John R. Williams the real and personal property inventoried in the estate of Louise Williams, his wife, and John R. Williams obligated himself to pay plaintiff for such legal services thirty-three and one-third per cent of all amounts so recovered, by way of suit

or settlement or before or after suit is brought. In the second part of this agreement plaintiff contracted with the potential legal heirs of John R. Williams. Under this agreement said potential legal heirs, including Thomas Williams, agreed that in the case of the death of John R. Williams, as provided in the first part of this agreement, the contingent fee should bind the share and interest of such heirs in the estate of said John R. Williams, and plaintiff agreed that he would represent said heirs apparent upon the same terms as mentioned in the contract with John R. Williams.

We find that under this agreement plaintiff was employed, and it was his duty to take such steps as he deemed necessary to have John R. Williams restored to sanity in the Probate Court of Greene County, Missouri; and it was his further duty to John R. Williams to take such steps as he deemed necessary under the law to represent John R. Williams in securing the estate of his deceased wife, Louise Williams and having the same distributed to him by the Probate Court of Greene County. Under this contract the plaintiff also became obligated to Thomas Williams and the other potential legal heirs of John R. Williams, in the case of the death of John R. Williams, to perform the same services for such potential legal heirs and their individual interest therein as he was required to do for John R. Williams, had the said John R. Williams lived. In other words, it would have been plaintiff's duty under this supplemental contract, in case of the death of John R. Williams, to have protected the interest of the legal heirs of John R. Williams in the distributive estate of Louise Williams to the estate of John R. Williams.

We hold that the agreement made between plaintiff and all the legal heirs of John R. Williams, deceased, including Thomas Williams, dated January 23rd, 1943, and introduced in evidence as plaintiff's exhibit "B", is a modification of the first contract made, the legal effect of which we have herein stated. Under this agreement plaintiff agreed to accept a specified fee of $11,000.00, in lieu of the contingent fee of thirty-three and one-third per cent as provided in the first contract for his legal services. It was agreed in this contract that such attorney's fee should be paid in the regular course of administration and should be deducted from the distributive share of John R. Williams' estate in the estate of Louise Williams. Plaintiff agreed, in addition to the services required by him under the first contract, to act as attorney for Ben M. Neale, administrator of the estates of John R. Williams and Louise Williams, when Walter H. Henderson, the then present administrator, vacated said office, and to perform all legal services in both of said estates, including the final settlements thereof, without other fee than the $11,000.00 provided in this agreement. It was agreed between the parties that Ben M. Neale serve as administrator of both of said estates for one legal fee of five per cent, which could be claimed in either estate.

It was further agreed in this contract, between all the parties, that plaintiff was to be reimbursed for all expenses and disbursements and advances made by him heretofore for the benefit of John R. Williams or in the management of the affairs under this contract, and that such reimbursements should be paid out of the estate of John R. Williams, deceased. The legal effect of this contract is that Thomas Williams, deceased, together with the other legal heirs of John R. Williams, deceased, employed plaintiff to carry out the terms of the first contract entered into with John R. Williams. This first contract provided that plaintiff take such steps as he deemed necessary to protect the interest of John R. Williams in having the estate of Louise Williams, both real and personal, distributed to John R. Williams. The modified contract provides that these services shall be rendered to the heirs of John R. Williams, which includes Thomas Williams, for the contract provides that, "in addition to the services called for by this contract," which could only refer to the first contract, as there were no other services provided for in the modified contract. We hold, under this provision, that the parties clearly intended that all of the contracts should be considered together and that the services provided for in the modified contract, included all the services provided for in all the contracts.

We hold the legal effect of the contract, which includes both the original and modified contract together, is that plaintiff was employed by Thomas Williams, deceased, heir to one-sixth interest in the estate of John R. Williams, to take such steps as plaintiff deemed necessary to have the distributive interest of John R. Williams in the estate of Louise Williams paid to the estate of John R. Williams and to him, and in case of his death, to his legal representative, defendant, ancillary administrator of Thomas Williams, deceased.

Under points "a" and "b" of appellant's first assignment of error he asserts that the estate of Thomas Williams was bound to the plaintiff under the contract and that by mutuality of contract plaintiff was bound to the estate of Thomas Williams to perform the services provided for in said contract.

We agree with appellant that the essential characteristic of a valid contract is that it is mutually binding upon all the parties to it. Aslin v. Stoddard County, 106 S. W. 2d 472. In this case the court declared the law as follows: "An essential characteristic of a valid contract is that it is mutually binding upon the parties to it." In Laclede Construction Co. v. Tudor Iron Works, 69 S. W. 384, the court said: "It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding correlative obligation

will be implied, * * * ." In Jesse v. Rolaff, 74 S. W. 2d 890, l. c. 893, the court states the law thusly: "It is fundamental that before there can be a binding contract, in addition to other elements not involved in this case, there must be a meeting of minds between the contracting parties. * * * If one of the parties is not bound, neither is "bound." This case cites Reynolds v. South Side Nat. Co. (Mo. App.) 64 S. W. 2d 297. The court stated in Schurtz v. Cushing, 146 S. W. 2d 591, l. c. 594: "A party cannot affirm a contract in part, and repudiate it in part."

Under "c" of point 1 of appellant's first assignment of error he contends that where an attorney accepts employment for a specified fee to conduct a certain matter to its conclusion and client does not retain the control and direction of the attorney, the death of the client does not relieve the attorney from performing and carrying the matter to its conclusion nor, on the other hand, does it relieve the personal representative of the client from paying. The question in the case before us is, did the death of Thomas Williams terminate his contract with plaintiff? In Price v. Haeberle, 25 Mo. App. 201, a claim was presented against the estate of Aletha J. Roberts, deceased, for services rendered by claimant as attorney at law, in prosecuting certain actions for the deceased. The contention was made that all the services were not rendered during the lifetime of Mrs. Roberts. The contract was for a contingent fee of one-half of the damages recovered in a certain action. The client died before the action was finally terminated. The court declared the law as follows: "It thus appears that the plaintiff had made with the decedent, in her lifetime, a contract, the performance of which he had entered upon, and under which a substantial right had accrued to him. At the time of her death that right was in the nature of a vested right, subject, of course, to be defeated by the failure on his part to prosecute to the end the duties which he had engaged to perform under the contract. In this state of the case, his contract was not determined by the death of Mrs. Roberts. * * * It, therefore, does not fall within the reason of the rule of the cases which hold that an action will not lie against an administrator, in his representative character, for services rendered to the estate of a decedent, at the request of such administrator. The claim, from its very nature, was not apportionable. It was an entire thing. The death of Mrs. Roberts did not absolve the plaintiff from the obligation which he had assumed, to her, of performing, on his part, "the duties which he had undertaken, nor did it absolve her personal representative from complying with the contract on his part, * * * ." In Morgan v. Gibson, 42 Mo. App. 234, the action was based upon a written promise of the defendant intestate, and to recover from the administrator a contingent fee of a claim placed in plaintiff's hands for collection. The court there stated:

"It was decided in Hunt v. Rousmanier, 8 Wheat. 174, which is a leading case on that subject, that the power to do one thing in the name of another expires with the death of the party granting it, although it be irrevocable on its face, and given for a valuable consideration, unless it be coupled with an interest in the thing to which it relates. * * * 'The interest or title in the thing, being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by regular act in his own name. * * * But if the interest or estate passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. * * * He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate. * * * .' " The rule is stated in 7 C. J. S. Sec. 113, p. 946, as follows: "Nevertheless, the death of the client does not terminate the relation or revoke the authority of the attorney where the contract of employment is by its terms to continue thereafter; where the attorney is specifically retained to conduct the case to judgment or conclusion; where the client does not retain the control and direction of the attorney in the performance of his services, and neither the terms of the contract nor its subject matter requires the aid or presence of the client to enable the attorney to give the required services; or where his authority is coupled with an interest. Although a contract for a contingent fee payable out of the proceeds of the recovery has been held insufficient to give the attorney an interest for this purpose, if the contract is an entire one to prosecute a claim to final adjudication for an exclusively contingent fee, the employment is not revoked by the death of the client." In re Mallory's Estate, 278 Pac. 488, the court states that it is an elementary rule of law that the relation of an attorney and client is terminated by the death of the client, but an exception is made in the case of special contract of employment, such as a specific contract to conduct a suit for final judgment or some agreement on a fee in the entire case. This case cites 31 Ruling Case Law, 959 and 50 A. L. R. 641. We have examined numerous authorities, many cited by the plaintiff and the defendant in this case, and we have come to this conclusion that the contract entered into between the plaintiff and John R. Williams and between the Plaintiff and the legal heirs of John R. Williams, including Thomas Williams, was one in which the client retained no control whatsoever over the action of the plaintiff in carrying out his duty. Clearly the original contract contemplated the carrying on of the work after the death of John R. Williams by its expressed terms; and the contract between Thomas Williams, which was a modification of the original contract, was one in which the plaintiff was to continue the services in recovering for the estate of John R. Williams the property in the estate of Louise Williams, deceased, and Thomas Williams re-

served no right or control over the actions of plaintiff in completing this work. The contract provides that plaintiff shall take such legal steps as he deems necessary for the recovery of this property showing that it was the intention of the parties that the clients were to have no control over the acts of plaintiff. And the services provided for in the modified contract, where plaintiff is required to represent the administrator of the estates of John R. Williams and of Louise Williams until final settlements were made therein, contemplates the carrying out of specific work or obligations over which Thomas Williams had no control whatsoever. We hold that plaintiff had an interest in this estate for his attorney fees; that he had complete control over the work to be done and that this constitutes an exception to the rule that death terminates contracts.

Under "d" of point 1 of appellant's assignment of errors, he claims that plaintiff abandoned any rights he had against the Thomas Williams' estate when he entered into a contract to prevent that estate from receiving the identical funds upon which he now attempts to impose an equitable lien. We consider this to be the all important assignment of error in appellant's appeal.

It is conceded that, prior to the distribution of the estate of John R. Williams to his legal heirs, Thomas Williams died and that after his death plaintiff entered into a contract with the living legal heirs of John R. Williams to have all of the money distributed to the estate of John R. Williams from the estate of Louise Williams, deceased, to such heirs and to deprive the estate of Thomas Williams from receiving his one-sixth interest therein or any interest therein. The facts on this point are undisputed. Plaintiff filed a petition in the Probate Court asking the court to order the distribution of the estate of John R. Williams to his living heirs and stated to the court, in defense of this petition, that Thomas Williams had no interest in the estate of John R. Williams because he died before the estate of John R. Williams received distribution of the estate of Louise Williams and that his (Thomas Williams') share, under the law, would go to the other blood heirs of John R. Williams. The evidence shows that even in his attempt to compromise with the ancillary administration of Thomas Williams he insisted that Thomas Williams had no right to a distributable share of the estate of John R. Williams.

It is plaintiff's contention, as set forth in his brief and argument, and we quote from the argument, that "Contrary to appellant's assumption, plaintiff was not, under the contract in suit, the attorney for Thomas Williams. Neither was he attorney for Thomas Williams' estate. There was no such estate when plaintiff was employed. Neither was he attorney for Thomas Williams' widow. There was no such widow when plaintiff was employed. * * * It is true that plaintiff was employed to render certain services, but not to Thomas Williams nor to his estate, nor to his widow. The employment which

158

plaintiff undertook was to render certain services to John R. Williams, then living, but who died in two months. Plaintiff was thereupon employed to render certain services to the administrator of John R. Williams' estate and to the administrator, *de jure*, of Louise Williams' estate.'' This question, we believe, is determined by the construction of the contract upon which plaintiff relies for recovery herein. It is a legal question to be decided by the court.

Plaintiff first contends that Thomas Williams had no interest in the estate of John R. Williams, which was derived from the estate of Louise Williams because he died prior to the distribution of the estate of Louise Williams.

When Louise Williams died leaving John R. Williams her sole and only heir, he was vested immediately with the equitable title to all of her property subject to the expenses of administration and the claim of creditors. In Bostian v. Milens, 193 S. W. (2d) 797, the Kansas City Court of Appeals passed upon this very question. This court stated, l. c. 802: '' 'The general scope of our laws of descent and distribution is along the line of the common law.' In addition to this, there is no logical reason upon which to make a distinction between real and personal property, in the application of the rule.'' It was the contention in this case that the title to personal property passed to the administrator and that the equitable owner or heir had no title until the estate was ordered distributed. The court, stating the law on page 803, said: ''It is well settled in this state that, while the legal title to personalty descends to the administrator, he is merely a trustee for the benefit of creditors, legatees, heirs and distributees and that the equitable title is in them. Love v. White, 348 Mo. 640, 154 S. W. 2d 759, 760; Richardson v. Cole, 160 Mo. 372, 61 S. W. 182, 183, * * '' Wass v. Hammontree, 77 S. W. 2d 1006, and many other cases. We quote again from Bostian v. Milens, l. c. 804, *supra*: ''The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death.'' The court, in this case, held that immediately upon the death of the intestate, the persons entitled to personal property as heirs, acquired a vested equitable right, title or estate therein, subject to the right of the creditors and to charges and expenses of administration. The heir has an interest that may be assigned. 26 C. J. S., Descent and Distribution, Sec. 76, pp. 1118, 1119, Vantage Mining Co. v. Baker, 170 Mo. App. 457; 155 S. W. 466. So, in the case before us, when Louise Williams died September 14th, 1942, John R. Williams was vested with the equitable title to all of her personal property subject to the right of her creditors and to the charges and expenses of administration. When this estate was finally distributed to the estate of John R. Williams the legal title related back to the date of the death

of Louise Williams, and when John R. Williams died January 14th, 1943, Thomas Williams, his brother, became vested with the equitable title to one-sixth interest in the distributable share of John R. Williams in the estate of Louise Williams, and, when that estate was distributed to the ancillary administrator of Thomas Williams and the one-sixth interest paid to him, being $9,666.66, the legal title to that interest so inherited by Thomas Williams, as heir of John R. Williams, related back to the death of John R. Williams, to wit: January 14th, 1943. Bostian v. Milens, *supra*.

We therefore hold that at the time Thomas Williams signed the supplemental agreement, which is a part of the original contract entered into between plaintiff and John R. Williams and the potential heirs of John R. Williams, Thomas Williams bound his estate, or potential inheritance in case of the death of John R. Williams, in consideration that plaintiff protect that potential interest of the said Thomas Williams, which would come from the estate of Louise Williams when distributed; and we hold that when this contract was modified by the agreement between plaintiff and Thomas Williams, together with the other heirs of John R. Williams, dated January 23rd, 1943, Thomas Williams had a vested right, although it was equitable, in the distributable share of the Louise Williams' estate to the estate of John R. Williams, and that under the terms of this contract plaintiff agreed and was bound to represent Thomas Williams in the handling of such estate up to and including the final settlement and distribution of John R. Williams' estate, and the payment of this one-sixth interest of said estate to the defendant, ancillary administrator of the estate of Thomas Williams. What other consideration could there have been for Thomas Williams to enter into a contract with plaintiff to bind his inheritable interest and equitable title in the estate of John R. Williams, which was vested at the time, unless it was to protect his interest in the estate of John R. Williams, along with the interest of all the other heirs, and to pay for legal services to be rendered by plaintiff to the estate of John R. Williams, which would inure to his benefit.

We cannot agree with plaintiff's contention, as set out in his argument herein, that he did not represent Thomas Williams; that he did not represent Thomas Williams' estate or Thomas Williams' widow, who would inherit his estate. We believe and find that he did represent Thomas Williams under the contract of employment relied upon, and that he was duty bound and legally bound not to accept employment inconsistent and adverse to the interest of Thomas Williams or his personal representative, defendant, as ancillary administrator of the estate, save and until the estate was finally distributed to the defendant as ancillary administrator. We hold that the contract entered into with the other heirs to have Thomas Williams' interest in John R. Williams' estate distributed to the blood heirs of John R.

Williams, which employment would not only decrease Thomas Williams' rights in the estate but would completely destroy the same, was an abandonment of such contract so entered into with the said Thomas Williams and a breach of his contractual duty under said contract. And, under the law, we believe that plaintiff cannot recover on a specific contract when he, himself, has not complied with its terms, but has abandoned such employment by accepting employment which was adverse to such interest. In re Thomasson's Estate, 196 S. W. 2d 155, 162, Laughlin v. Boatmen's Nat. Bank of St. Louis, 163 S. W. 2d 761, State ex rel. Terry v. Holtkamp, 51 S. W. 2d 13.

Appellant's assignments of error "e", "f" and "g", under Point 1, have been covered by our opinion under assignment "d".

In his assignment "h" under Point 1, appellant states an abstract proposition of law that the personal estate of an intestate goes ultimately to those who are his next of kin at the time of his death and not to the next of kin at the time of distribution.

It was this law, and we think a misconception of it, that caused plaintiff to enter into a contract with the heirs of John R. Williams to defeat the interest of Thomas Williams in the estate of John R. Williams. We hold the law to be that the personal estate of John R. Williams descended to his next of kin at the time of his death, which included Thomas Williams, and that the Probate Court was right in overruling the petition filed by plaintiff for the blood relatives of John R. Williams to defeat the interest of Thomas Williams in said estate. 26 C. J. S., Sec. 67, p. 1101, Bostian v. Milens, *supra*, Sec. 2450, R. S. Mo. 1939, Mo. R. S. A.

Appellant's assignment of error numbered 2, in his brief, raises the question of the trial court's limiting the testimony offered as defendant's exhibit 3 for the sole purpose of showing a breach of contract. Exhibit 3 was the petition filed by plaintiff for the blood heirs of John R. Williams in the Probate Court to have the interest of Thomas Williams distributed to them. Appellant contends that this evidence should have been admitted generally and not limited. We find that there is no harmful error here for the reason that the appellate court has before it the instrument and the right to consider it for whatever purpose the court deems it admissible. Brooks v. Brooks, 208 S. W. (2d) 279, 285.

Appellant also raises the question of a jury trial under this assignment of error. He cites no authorities nor does he argue this point. We therefore deem the point waived. Supreme Court Rule 1.08.

Under assignment "b" of Point 2, the errors complained of therein have been considered by us and it is unnecessary to regard them further.

Appellant raises the question of ethical conduct and clean hands on the part of plaintiff, under assignment "c", Point 2.

We find that Frank B. Williams, the plaintiff in this case, rendered valuable services to these estates; that while we cannot agree with his contention that he owed no duty to Thomas Williams in having his interest distributed to Thomas Williams' estate, yet we cannot but appreciate the efficient work he did in settling the many complicated matters arising under his employment. We do not desire to make any criticism whatsoever of Mr. Williams' conduct, but we only disagree with him on the law and hold that he cannot recover because of his mistaken ideas of the law. We think that there is absolutely no grounds to say that he was not ethical and that he was not honest in the work he did.

Appellant's assignment of error numbered 3, complains that the court erred in rendering judgment for plaintiff for the reason that plaintiff's claim for attorney's fee should have been asserted during the administration of the estate of John R. Williams.

We cannot agree with this contention. The estate of Thomas Williams is liable to plaintiff by the terms of the contract entered into between plaintiff and Thomas Williams. While the contract provided that it should be paid in regular course of administration and be deducted from the distributive share of John R. Williams in the estate of Louise Williams, yet it was an obligation of Thomas Williams and not an obligation of the estate of John R. Williams. We hold that had plaintiff fulfilled the obligations of his contract with Thomas Williams, he would have been entitled to $1833.33, and that sum, under the contract, was to be deducted from the share of Thomas Williams in the proceeds received by the estate of John R. Williams out of the estate of Louise Williams. We hold that this liability arose out of the acts of Thomas Williams in contracting with plaintiff after the death of John R. Williams and was the obligation of Thomas Williams and not the obligation of the estate of John R. Williams. We hold that the interest of Thomas Williams, to wit: $9,666.66, was money derived from the estate of Louise Williams as a result of the efforts of plaintiff acting as attorney for Thomas Williams, under the contract sued on herein, and that plaintiff, under the law, had a lien for the payment of the attorney's fee on this fund; that he had a right in equity to follow this fund into the hands of the defendant, ancillary administrator of Thomas Williams and have judgment for the stipulated attorney fee and have it declared a lien against the interest so distributed to the ancillary administrator from the estate of John R. Williams. Schempp v. Davis, 211 S. W. 728, Nelson v. Massman Const. Co., 120 S. W. 2d 77, and other cases. The reason that plaintiff cannot recover in this suit is that we believe he did not fulfill his obligation under the contract.

Appellant's further contention, in his third assignment of error, is that attorney fees are expenses of administration and he cites Section 220, R. S. Mo., 1939 and other authorities. We again affirm what we

said in the first paragraph of this opinion that the attorney fees in question here were not expenses incurred by John R. Williams, but were obligations incurred between plaintiff and Thomas Williams and therefore are not expenses of administration incurred in the estate of John R. Williams.

Appellant complains, in his fourth assignment of errors, that the trial court erred in sustaining plaintiff's motion to strike paragraphs 10, 11 and 12 of Defendant's answer to the second amended petition. We have examined this assignment and find that paragraph 12 certainly should not have been stricken from the answer because it contains a denial of plaintiff's allegation that he performed his part of the contract; and we see no reason why the court should have stricken paragraphs 10 and 11, and we think the court was wrong in so doing. We find, however, that the issues were fully covered by the pleadings and that there was no harmful error committed.

In appellant's assignment of error numbered five he contends that chancellor's findings lose their weight when he excludes competent evidence. There can be no question about this law. In Brooks v. Brooks, supra, l. c. 285, the court stated: The Chancellor excluded from consideration competent evidence of record respecting the res and vital to plaintiff's case. It is our duty to consider all competent evidence, including that excluded by a chancellor, and to render such judgment as should have been rendered. A chancellor's findings lose weight when he excludes competent evidence.''

In sub-topics ''a'', ''b'' and ''c'', under assignment five, appellant complains that the trial court erred in excluding a copy of the Laws of Kansas, which provides that the surviving spouse of the decedent shall take the entire estate where there are no children.

Under the law the legal title of Thomas Williams' property passed to the ancillary administrator, the defendant. We can see no reason for going further than to determine the rights of plaintiff to establish an equitable lien of the funds in question in the hands of the ancillary administrator and, therefore, deem this assignment of error harmless.

Appellant's other contentions of error, growing out of the trial court's exclusion of testimony, have been examined by the court, but, under our view of the case it is unnecessary to decide them.

The judgment is reversed and the cause remanded to the lower court with directions to enter a judgment for the defendant. *Nick T. Cave*, Special Judge, sitting temporarily in lieu of Judge Vandeventer, concurs; *Blair, J.*, concurs.